**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

| | | |
|---|---|---|
| GOOD SAMARITAN MEDICAL CENTER, INC., et al., | ) | |
| Plaintiffs, | ) | Case No.: 9:25-cv-80526-DMM |
| v. | ) | |
| THE LEAPFROG GROUP, | ) | |
| Defendant. | ) | |

**DEFENDANT THE LEAPFROG GROUP'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2) AND 12(b)(6) AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT OF THE SAME**

NOW COMES Defendant, The Leapfrog Group ("Leapfrog") by and through its attorneys, Kimberly E. Blair and Thomas K. Duff of Wilson Elser Moskowitz Edelman & Dicker LLP, and for its Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6) and incorporated memorandum of law in support of the same, states as follows.

## **INTRODUCTION**

Leapfrog is an independent national nonprofit driving a movement for giant leaps in patient safety. Among its initiatives is the biannual "Leapfrog Hospital Safety Grade" which assigns letter grades to hospitals based on its assessment of their ability to protect patients from avoidable harm and errors. The current dispute arises from Plaintiffs' dissatisfaction with the Safety Grades they received in Leapfrog's Fall 2024 and, now, Spring 2025 publications. In an attempt to impermissibly interfere with Leapfrog's free speech, stifle Leapfrog's opinion of their hospitals, and prevent future publication of their grades, Plaintiffs now claim that Leapfrog's publication of Safety Grades for their hospitals violates the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). This Court can swiftly dismiss this case with prejudice for any of three reasons: (1) Leapfrog's opinions are protected under the free speech clause of the First Amendment; (2) this Court lacks personal jurisdiction over Leapfrog; and (3) Plaintiffs' Complaint fails to state a claim for relief under the FDUTPA.

***First,*** with regard to the First Amendment, Plaintiffs' claims in this lawsuit are incompatible with an avalanche of case law in which courts have upheld the free speech right of ratings organizations to publish their ratings opining on topics such as quality and safety. Leapfrog's Hospital Safety Grades and related representations are protected opinion under the First Amendment because they are not readily provable as true or false. They are also protected as "pure opinion" in light of Leapfrog's publication of the full grading methodology and data that form the basis for the Hospital Safety Grades and Leapfrog's representations related thereto.

***Second,*** Leapfrog is not subject to personal jurisdiction in Florida. Leapfrog is incorporated and headquartered in Washington, D.C. Although Leapfrog publishes its Safety Grades (including those for Florida hospitals) online, Plaintiffs' claims do not arise out of Leapfrog's purchase or sale

of products or services in Florida or any other significant contacts Leapfrog has within Florida.

***Third,*** the FDUTPA does not apply to Leapfrog's conduct due to the non-commercial nature of Leapfrog's Safety Grades and their lack of a commercial nexus to Florida. Leapfrog does not compete with these hospitals in any way. The Complaint also fails to sufficiently allege how Leapfrog's Safety Grades or related representations qualify as a "deceptive act" or "unfair practice" under the FDUTPA. There is nothing deceptive about the Safety Grades, which – it bears repeating – are supported by Leapfrog's publication of the full grading methodology and data upon which they are based, information that most ratings organizations do not disclose. Even regardless of this, Plaintiffs fail to plead the requirement of "actual damages" incurred by their hospitals or consumers.

The reality is that Plaintiffs have filed this lawsuit in an attempt to suppress Leapfrog's publication of its opinion on patient safety in hospitals – a vitally important matter of public concern – rather than confront the patient safety issues in their hospitals. This meritless lawsuit violates Florida's "Anti-SLAPP" statute prohibiting Strategic Lawsuits Against Public Participation ("SLAPP"). In the event this Court grants this Motion, Leapfrog respectfully requests leave to seek its fees and costs incurred defending this meritless litigation pursuant to the statute.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of a claim when the court lacks personal jurisdiction over a defendant. *See* Fed. R. Civ. P. 12(b)(2). The plaintiff "has the burden of establishing a prima facie case of personal jurisdiction." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006).

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6). To satisfy the pleading standard of Rule 8(a)(2), a complaint "must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 580 (2007)). Dismissal is therefore permitted "when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006).

On a Rule 12(b)(6) motion to dismiss, the Court must consider the complaint in its entirety, as well as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Under the "incorporation by reference" doctrine adopted by the Eleventh Circuit, the court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is: (1) central to the plaintiff's claim; and (2) of undisputed authenticity. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

## FACTUAL BACKGROUND

### I. Preliminary note on incorporation by reference of Leapfrog's websites:

Leapfrog respectfully requests that this Court consider certain webpages from its two websites, www.hospitalsafetygrade.org and www.leapfroggroup.org, as incorporated by reference in the Complaint. (See Webpages attached hereto as **Exhibits 3-38**). These websites are central to Plaintiffs' claims because Leapfrog publishes its Hospital Safety Grades on www.hospitalsafetygrade.org and "references and links" to the Hospital Safety Grades on www.leapfroggroup.org. (*See* Complaint (**Ex. 1**) at ¶46). These two websites are discussed by Plaintiffs throughout the Complaint. (*See, e.g.*, *id.* at ¶¶1, 46, 76-84, 85-102).

The webpages attached hereto as Exhibits 3-38 are of undisputed authenticity because each of them has previously been filed by Plaintiffs in this case along with an affidavit specifically attesting to the authenticity of each one. (See Affidavit of Lee Crain (**Ex. 2** (ECF No. 21)) at ¶¶3-

25, 33-37, 45, 60-65, 67; and Webpages (**Ex's 3-38** (ECF Nos. 21-1 through 21-23, 21-31 through 21-35, 21-43, 21-58 through 21-63, and 21-65)). These webpages are therefore properly considered as incorporated by reference in the Complaint. *See Horsley*, *supra*, 304 F.3d at 1134.

**II. Background on The Leapfrog Group:**

Leapfrog is an independent national 501(c)(3) nonprofit driving a movement for giant leaps in patient safety. Leapfrog is incorporated and headquartered in the District of Columbia. (**Ex. 1** at ¶14). Among its initiatives is the biannual "Leapfrog Hospital Safety Grade" which uses publicly available data from the federal Centers for Medicare and Medicaid Services ("CMS") as well as self-reported data from the Leapfrog Hospital Survey, when available, to assign letter grades to general acute care hospitals.[1] Hospital Safety Grades provide informed analysis of the safety of individual hospitals as a public service at no cost to patients, potential patients, or hospitals themselves. (*See id.* at ¶47; FAQ Webpage (**Ex. 3** at pp. 1-2)). Leapfrog's "How to Use the Grade" webpage on www.hospitalsafetygrade.org summarizes proper use of the Safety Grade: "You should never refuse care in an emergency because of a hospital's Safety Grade, but use this website as a guide for planned events and a research tool for potential emergencies." (**Ex. 17** at p. 4).

**III. Leapfrog's Hospital Safety Grades:**

Leapfrog assigns A, B, C, D, and F letter grades to nearly 3,000 hospitals nationwide every spring and fall, and publishes these Hospital Safety Grades on its website, www.hospitalsafetygrade.org. (**Ex. 1** at ¶¶1, 46). Leapfrog also references and links to its Hospital Safety Grades on www.leapfroggroup.org. (*Id.* at ¶46). The format of the Hospital Safety Grade is "a single letter grade" that "represent[s] a hospital's 'overall performance in keeping patients safe

[1] This Court may properly take judicial notice of Leapfrog's nonprofit designation which is available as a public record on the District of Columbia's corponline.dcra.dc.gov website at https://corponline.dcra.dc.gov/BizEntity.aspx/ViewEntityData?entityId=2668442. *See Tecnoglass, LLC v. RC Home Showcase, Inc.*, 301 F. Supp. 3d 1267, 1270 n.1 (S.D. Fla. 2017).

from preventable harm and medical errors.'" (*Id.* at ¶48). Leapfrog awards an "A" to hospitals that it assesses as among the highest performing, followed in order by "B", "C", "D", and "F". (*Id.*).

These Safety Grades are the product of Leapfrog's own grading methodology, the current version of which Leapfrog makes publicly available on its www.hospitalsafetygrade.org website. (*See* Spring 2025 Methodology (**Ex. 5**); Fall 2025 Methodology (**Ex. 31**)).

Leapfrog's methodology considers up to 31 patient safety measures in determining a Safety Grade for each hospital graded. (**Ex. 5** at 6-10; **Ex. 31** at 6-9). In assessing a hospital's performance on these measures, the methodology considers publicly available data from CMS as well as quality and safety data from hospitals submitted through Leapfrog's own annual "Leapfrog Hospital Survey". (**Ex. 1** at ¶48). The Hospital Survey is free for hospitals to complete. (*Id.* at ¶46; *see* 2025 Leapfrog Hospital Survey (**Ex. 21**); **Ex. 5** at 17; **Ex. 31** at 16). All data submitted undergoes thorough review and verification. (*See* **Ex. 21** at 18-19). Leapfrog's grading methodology provides Hospital Safety Grades for all general acute care hospitals regardless of their participation in its Survey. (*See* **Ex. 1** at ¶49).

Leapfrog receives responses to its Survey from hospitals nationwide including hospitals located in Florida. (*See* **Ex. 1** at ¶¶17-18). Leapfrog also publishes Hospital Safety Grades on its website for hospitals nationwide including hospitals in Florida. (*See id.*). Leapfrog shares Hospital Safety Grades and provides public comments regarding the Safety Grades to media publications, including publications in Florida. (*See id.*).

Like any grading or rating system, Leapfrog's methodology includes instruction on how to score missing data. (*See, e.g.*, **Ex. 5** at 25; **Ex. 31** at 23). For instance, if a hospital does not have an Intensive Care Unit ("ICU"), some measures that assess ICU safety do not apply to that hospital. (*Id.*; **Ex. 1** at ¶¶80, 88, 92, 95, 98, 101). For hospitals that participate in Leapfrog's Hospital Survey,

Leapfrog's methodology uses the hospitals' answers to the Survey for 12 of the 31 measures. (**Ex. 1** at ¶48). Due to the voluntary nature of the Survey, however, data for these 12 out of 31 measures may be unavailable for hospitals that choose not to submit a Survey. (**Ex. 5** at 17; **Ex. 31** at 16). Where data is unavailable for more than six of these 12 measures (known as "Process/Structural measures") due to a hospital's inability to report such data, Leapfrog does not issue a Safety Grade for that hospital. (**Ex. 5** at 5, 27; **Ex. 31** at 5, 24). Otherwise, to address this gap in available data, Leapfrog's grading methodology relies on alternate publicly available CMS data for five of those measures. (**Ex. 5** at 17; **Ex. 31** at 16). For three of the 31 measures, the methodology reassigns the weight of those measures to other measures and thus removes them from consideration. (**Ex. 1** at ¶49; **Ex. 5** at 25-26; **Ex. 31** at 23).

Plaintiffs' lawsuit revolves around their disagreement with how Leapfrog's grading methodology deals with missing data for the remaining four out of 31 measures, which are: Computerized Physician Order Entry ("CPOE"), Bar Code Medication Administration ("BCMA"), ICU Physician Staffing ("IPS"), and Hand Hygiene Score. (**Ex. 1** at ¶51). For missing data for these four measures, the methodology uses a hospital's most recent score from the past two rounds of grades. (**Ex. 5** at 17; **Ex. 31** at 16). Where there is no such historical data from the past two rounds of grades, the methodology assigns a point value equivalent to receiving "Limited Achievement" for that measure as a conservative methodological approach to avoid overstating performance. (*See* **Ex. 1** at ¶¶50, 52; **Ex. 1** at 17; **Ex. 31** at 16). Leapfrog has updated its grading methodology in consultation with researchers at Johns Hopkins Medicine and an internal team of experts over the course of its 25-year history to yield more accurate, informative grades that favor the needs of patients making profound decisions about hospital care. (*See* Fall 2024 Methodology Updates (**Ex. 38**) at 3). Leapfrog releases planned changes months in advance to seek public comment, which

typically yields many comments from hospitals and the public. (*See id.* at 2, 4-5). These are often helpful to Leapfrog in revising or fine-tuning its methodology. (*See id.*).

**IV. Publicly Accessible Data and Grading Methodology on Leapfrog's Websites:**

Leapfrog maintains two public websites related to the publication of its Hospital Safety Grades: www.hospitalsafetygrade.org and www.leapfroggroup.org. (**Ex. 1** at ¶76). These websites encourage users to view its full grading methodology as well as the data and analysis used to grade each hospital. Leapfrog's mission is to improve patient safety through full transparency, and that mission is only achieved when there is full transparency in its ratings programs. (*See* **Ex. 3** at 8-9). Leapfrog's www.hospitalsafetygrade.org website reflects that Safety Grades are "100% transparent and free to the public" (*Id.* at pp. 2-3)); provides links to the full grading methodology in multiple places. (*See id.* at pp. 5-6; "About the Grade" Webpage (**Ex. 4**) at p. 4 (see "Quick Links"); **Ex. 5**; **Ex. 31**); and explains the Fall 2024 methodology update and the preceding public comment period. (*See* **Ex. 38**).

On www.hospitalsafetygrade.org, searching a hospital's name brings up that hospital's Safety Grade for the most recent grading period. (**Ex. 1** at ¶79). From here, clicking on a link entitled "View the full Score" displays further information detailing Leapfrog's basis for the hospital's letter grade, including the scores that Leapfrog's grading methodology has assigned to the hospital for each of the 31 measures considered and a description of each measure. (*Id.* at ¶¶80, 88, 92, 95, 98, 101).

Importantly, this webpage includes a section entitled in bold text, "Notes and Definitions", which explains how and why Leapfrog would assign a score for designated measures where data is unavailable, as is the case for the four out of 31 measures upon which Plaintiffs base their claims. (*Id.*). The first such entry explains in bold, red text that "Declined to Report" means: "The hospital

was asked to provide this information to the public, but did not." (*Id.*). The second such entry explains in bold, red text that an asterisk ("*") means: "The hospital declined to report their performance on this measure, so a score was assigned to reflect the lack of information available." (*Id.*). Notations for these designations appear throughout the webpage. (*Id.*). The "Notes and Definitions" section also clarifies the methodological distinction between data that a hospital has "Declined to Report" compared to data that is "Not Available" because the hospital itself does not have data for this measure. (*Id.*; *see also* **Ex. 5** at 27; **Ex. 31** at 24).

This webpage highlights the sources relied on by Leapfrog's methodology. The webpage features a bright green hyperlink entitled, "For details on sources, click here.", a hyperlink offering a "Detailed table view" for the scoring behind a hospital's Hospital Safety Grade, and a hyperlink entitled "View this hospital's Leapfrog Hospital Survey Results". (**Ex. 1** at ¶¶80, 88, 92, 95, 98, 101).

Following this third hyperlink for a hospital that chose not to participate in Leapfrog's Survey leads to a message on www.leapfroggroup.org which states in relevant part, "[This hospital] has DECLINED TO RESPOND". (*See* **Ex. 1** at ¶¶82-84; Hospital Results Landing Pages (**Ex's 22-25, 37**); Hospital Survey Results (**Ex's 32-36**)). The same message appears next to each measure where the hospital declined to respond to the Survey. (*See id.*). Although Plaintiffs allege that this webpage states that "[Leapfrog] states that the hospital did not provide data to [Leapfrog] sufficient to rate the hospital", "discloses that TLG has inadequate information to rate the hospital as to every metric", and "admits" that "[Leapfrog] can't rate Plaintiffs", the webpage includes no such language. (*See id.*).

**V. Plaintiffs' Hospital Safety Grades:**

Plaintiffs are five hospitals in the Palm Beach, Florida region. (**Ex. 1** at ¶20). Plaintiffs' hospitals decline to submit data to Leapfrog via its Survey. (*See id.* at ¶¶2, 85). Plaintiffs' Hospital Safety Grades are poor. In Fall 2024, Delray Medical Center, Good Samaritan, and Palm Beach Gardens each earned an "F" (*id.* at ¶¶87, 91, 94), while St. Mary's and West Boca Medical Center each earned a "D" (*id.* at ¶¶97, 100). In Spring 2025, Delray Medical Center, Palm Beach Gardens, and West Boca Medical Center each earned an "F" (**Ex's 27, 29-30**), while Good Samaritan and St. Mary's each earned a "D" (**Ex's 26, 28**).

**VI. Plaintiffs' Claims in this Case:**

Plaintiffs' 54-page Complaint presents its allegations in the form of unsupported, sensationalistic rhetoric. (*See, e.g.*, **Ex. 1** at pp. 1-2, ¶¶1, 8). Leapfrog does not profit from the fact these hospitals decline to participate in its Survey and gains nothing financially from the hospitals' poor grades. Of course, however, the Court need not consider the falsity of these allegations for purposes of this Motion.

In any event, the thrust of Plaintiffs' case is identifiable: they allege that Leapfrog's Safety Grade for each of their hospitals "is a false and misleading statement" about their patient safety performance because they choose not to submit data to Leapfrog via its Survey. (*Id.* at ¶¶85, 90, 93, 96, 99, 102). Plaintiffs argue that the Safety Grades violate the FDUTPA as a result. Specifically, Plaintiffs disagree with Leapfrog's grading methodology insofar as it imputes conservative scores on four of the 31 measures discussed above (CPOE, BCMA, IPS, and Hand Hygiene) where self-reported data for these measures is not made available by the hospital. (*Id.* at ¶52). Plaintiffs assert that because of this methodological approach, Safety Grades for hospitals with imputed scores on these four measures are deceptive to patients. (*See id.*). Plaintiffs further imply that the First

Amendment does not protect Leapfrog because its motivation is financial gain. (*Id.* at ¶8). That is not the case.

Plaintiffs allege that their poor Safety Grades have harmed their reputation with patients, physicians, and business partners. (*Id.* at ¶¶103-09, 110-11, 116, 123). Plaintiffs allege that their poor Safety Grades have harmed patients by motivating them to choose to receive emergency care at hospitals located further away from them than Plaintiffs' hospitals. (*Id.* at ¶¶111-15, 123, 128).

**VII. Procedural History:**

Plaintiffs filed their Complaint on April 30, 2025. (**Ex. 1**). Count I alleges that Leapfrog's Safety Grades violate the FDUTPA. (*Id.* at ¶¶117-30). Count II seeks a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that Leapfrog's Safety Grades violate the FDUTPA. (*Id.* at ¶¶131-38). Plaintiffs seek to permanently enjoin Leapfrog from publishing its Safety Grades for Plaintiffs. (*Id.* at p. 53). Plaintiffs also filed a motion for preliminary injunction on May 17, 2025 seeking to suppress Leapfrog's publication of Fall 2025 Safety Grades for their hospitals. (ECF No. 20). However, Plaintiffs withdrew this motion on May 27, 2025. (ECF No. 34).

## ARGUMENT

### I. Leapfrog's Hospital Safety Grades are protected opinion under the First Amendment of the U.S. Constitution and Article I, Section 4 of the Florida State Constitution.[2]

#### A. Statements are protected under the First Amendment if they are either unverifiable or statements of "pure opinion".

Federal constitutional law is clear that in addition to true statements, the First Amendment protects "statements that are not readily capable of being proven false" and "statements of pure opinion". *See Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018). Courts universally

[2] "The scope of the protection accorded to freedom of expression in Florida under article I, section 4 of the Florida State Constitution is the same as is required under the First Amendment." *Department of Education v. Lewis,* 416 So. 2d 455, 461 (Fla. 1982).

acknowledge that a letter grade rating based on the subjective weighting of objective data – like Leapfrog's Hospital Safety Grades – cannot be proven true or false. In *Home Performance Alliance v. Better Business Bureau of West Florida*, 354 So. 3d 1165 (Fla. Dist. Ct. App. 2023), the Florida Second District Court of Appeal affirmed the dismissal of plaintiff's claims of tortious interference, libel, and defamation where all of the plaintiff's claims were based on the BBB's "D+" rating of plaintiff, which the court held was "a nonactionable opinion of the BBB". *Id.* at 1166-67.

In so holding, the Second District cited a slew of case law in which courts have protected letter grade ratings under the First Amendment, including: *Castle Rock Remodeling, LLC v. Better Bus. Bureau of Greater St. Louis, Inc.*, 354 S.W.3d 234, 242-43 (Mo. Ct. App. 2011) (holding that the BBB's "C" rating of the plaintiff was a protected opinion because it was "based on 'an evaluating process' and 'subjective opinion'" and was "not sufficiently factual to be susceptible of being proved true or false"); *Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 357 (Tex. Ct. App. 2013) (holding that the BBB's "F" rating of a company could not be defamatory "because it [was] the Bureau's self-described 'opinion' of the quality of [plaintiff's] services, which lacks a high degree of verifiability"); and *U.S. Structural Plywood Integrity Coal. v. PFS Corp.*, 524 F. Supp. 3d 1320, 1334 (S.D. Fla. 2021) (explaining that business ratings are nonactionable "subjective assessments by third-party entities").

Consistent with this principle, the Circuit Court of Cook County, Illinois in the similar case of *Saint Anthony Hospital v. The Leapfrog Group*, Case No. 2017CH14420 (Ill. Cir. Ct. June 25, 2018), granted Leapfrog's motion to dismiss on the basis of Leapfrog's First Amendment right to publish its Hospital Safety Grades. That the First Amendment demands the same result in this case is underscored by additional similar cases including *Perfect Choice Exteriors v. Better Bus. Bureau of Central Ill.*, 2018 IL App (3d) 150864; *Browne v. Avvo, Inc.*, 525 F. Supp. 2d 1249, 1252 (W.D.

Wash. 2007); and *Aviation Charter, Inc. v. Aviation Research Group*, 416 F.3d 864, 870-71 (8th Cir. 2005). As discussed below, this wealth of case law makes clear that Leapfrog's Hospital Safety Grades and related statements are protected opinion because they cannot be proven true or false.

A statement may alternatively be protected as "pure opinion" when the defendant "makes a comment or opinion based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public." *Turner*, 879 F.3d at 1262. "Whether a particular statement constitutes fact or opinion 'is a question of law for the courts, to be decided based on what the average person hearing or reading the communication would take it to mean.'" *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 695 (11th Cir. 2016). "In addition, the court must give weight to cautionary terms used by the person publishing the statement." *Morse v. Ripken*, 707 So. 2d 921, 922 (Fla. Dist. Ct. App. 1998). "Finally, the court must consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published." *Id.*

**B. Leapfrog's representations are protected opinion.**

Leapfrog's Hospital Safety Grades and its related representations are protected opinion under the First Amendment. As an initial matter, Plaintiffs' FDUTPA claim (*see* **Ex. 1** at ¶¶117-30) is "wholly derivative of the uncontested fact that [Leapfrog] assigned [Plaintiffs] an unfavorable safety rating". *See Aviation Charter*, 416 F.3d at 869. Related representations complained of by Plaintiffs are, therefore, "subsumed by [Plaintiffs'] challenge to [Leapfrog's] rating[s]". *See id.*

Plaintiffs frame their attack on their poor Hospital Safety Grades around four related representations by Leapfrog; however, each of these constitutes Leapfrog's protected opinion. **First,** Plaintiffs assert that Leapfrog's Hospital Safety Grades are deceptive because they are the product of an imperfect grading methodology. They contend that the methodology's imputation of scores for four of the 31 measures used in the Grade (CPOE, BCMA, IPS, and Hand Hygiene) is

deceptive because it "result[s] in artificially deflated overall grades with no basis in fact and no correlation to a hospital's actual safety performance." (**Ex. 1** at ¶52). Plaintiffs also assert that the methodology produces deceptive Safety Grades due to a lack of adequate auditing mechanisms to ensure the accuracy of self-reported data from hospitals. (*Id.* at ¶¶55, 58-60).[3] While Plaintiffs allege that the methodology is geared to produce profit for Leapfrog, nothing about the methodology or Plaintiffs' allegations supports that conclusion. (*See id.* at ¶¶60, 69-75; *see generally* **Ex. 5**; **Ex. 31**).

But regardless of Plaintiffs' methodological disagreements, their "D" and "F" Safety Grades simply cannot be proven true or false. *See, e.g.*, *Home Performance*, 354 So. 3d at 1166-67. Moreover, the Safety Grades are pure opinion because Leapfrog publishes on its websites all of the information relied upon in producing the Safety Grades, including: its updated grading methodology (**Ex. 3** at 5-6; **Ex. 4** at 4; **Ex's 5**; **Ex. 31**; **Ex. 38**); the basis for each Safety Grade and links to data sources including the hospital's Survey results (**Ex. 1** at ¶¶80, 88, 92, 95, 98, 101); clear indications where hospitals declined to respond to Leapfrog's Survey (*see id.* at ¶82; **Ex's 22-25; Ex's 32-37**); and the fact that all of this information is "100% transparent and free to the public" (**Ex. 3** at 2-3). Leapfrog's Hospital Safety Grade webpages also include specific notes, designations, and disclaimers aimed at clarifying the Safety Grade and data sources for each hospital. (*See* **Ex. 1** at ¶¶80, 88, 92, 95, 98, 101; **Ex's 26-30**)).

**Second,** Plaintiffs argue that Leapfrog's Safety Grades are deceptive because Leapfrog does not adhere to its own grading methodology. Plaintiffs contend that by grading hospitals by imputing

---

[3] Although Plaintiffs allege that "discrepancies exist" between Leapfrog's Safety Grades and CMS's hospital safety ratings for certain hospitals, they notably do not assert that any discrepancies exist between Leapfrog's Safety Grades and CMS hospital safety ratings ***for their hospitals***. Nor could they; Plaintiffs' poor Hospital Safety Grades from Leapfrog are wholly consistent with Plaintiffs' poor "Star Ratings" from CMS (*see* CMS Star Ratings for Good Samaritan, Delray, West Boca, Palm Beach Gardens, and St. Mary's on the CMS website), of which this Court can properly take judicial notice. *See Tecnoglass*, *supra*, 301 F. Supp. 3d at 1270, n.1.

scores for four of 12 identified "Process/Structural" measures where data is unavailable for seven of those measures, Leapfrog's methodology conflicts with its own requirement to not grade hospitals missing data for more than six "Process/Structural" measures. (**Ex. 1** at ¶53). This contention fails for two reasons. First, this ignores Leapfrog's published methodological distinction between data that a hospital has "Declined to Report" compared to data that is "Not Available" because the hospital itself does not have data for this measure. (*See* **Ex. 5** at 27; **Ex. 31** at 24; *see also* **Ex. 1** at ¶¶80, 88, 92, 95, 98, 101 ("Notes and Definitions")). Second, Leapfrog's published grading methodology fully explains its approach to missing data, including when scores are imputed for certain measures; in other words, the methodology must be considered as a whole and cannot conflict with itself. (*See id.*; **Ex. 5** at 17-18; **Ex. 31** at 16). Leapfrog's published methodology represents its opinion of how Safety Grades should be determined and cannot be proven true or false. And since this methodological approach is explained extensively by the published materials referenced above, it must be protected as pure opinion.

**Third,** Plaintiffs argue that Leapfrog has made deceptive statements reflecting that its Safety Grades represent a hospital's patient safety performance rather than whether a hospital participates in Leapfrog's Survey. (**Ex. 1** at ¶¶54, 121). However, Leapfrog's opinion of a hospital's performance on patient safety, though based on verifiable data and a transparent methodology, is nonetheless ultimately an opinion on the significance and weight of each element of data used in the calculation of a grade. For instance, "Process/Structural Measures" and "Outcome Measures" each account for 50 percent of the Safety Grade, and this is based on a consensus opinion among Leapfrog patient safety experts that this weighting is the best way to characterize safety performance. (*See* **Ex. 4** at 2-6; **Ex. 5** at 6; **Ex. 31** at 6). Others may certainly disagree with this opinion about weighting of measures, which is why Leapfrog discloses its full grading methodology

and the hospital's performance on each measure so that a viewers can form her own opinion of what an "A" or an "F" Safety Grade rating (as the case may be) represents.

**Finally,** Plaintiffs argue that Leapfrog's Safety Grades are misleading to patients because Leapfrog's www.hospitalsafetygrade.org and www.leapfroggroup.org websites provide inconsistent messaging relating to the Safety Grades. (**Ex. 1** at ¶¶76, 82). As noted, although Plaintiffs allege that www.leapfroggroup.org states that "[Leapfrog] states that the hospital did not provide data to [Leapfrog] sufficient to rate the hospital" and "admits" that "[Leapfrog] can't rate Plaintiffs" (¶84), the webpage does not include any such language. (*See id.* at ¶¶82-83; **Ex's 22-25**, **Ex's 32-37**). And regardless, as discussed, Leapfrog's websites highlight the basis for each Safety Grade, link to data sources including the hospital's Survey results, clearly indicate where a hospital declined to respond to the Survey, and feature specific notes, designations, and disclaimers aimed at clarifying the Safety Grade and its data sources. This level of transparency is exceptional for ratings organizations and is anything but "deceptive." As such, Leapfrog's Safety Grades are protected opinion and Plaintiffs' claims must be dismissed.

**II. Leapfrog is not subject to personal jurisdiction in the Southern District of Florida.**

A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1275 (11th Cir. 2009). The Eleventh Circuit applies the due process test for specific personal jurisdiction, examining: (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and

(3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013).

In *Louis Vuitton*, purposeful availment existed where the defendant "purposefully solicited business from Florida residents" through its "interactive, commercial website", received orders from multiple Florida residents to ship goods into Florida, and shipped those goods into Florida. *Id.* at 1357. By contrast, in *Toll v. Levi North*, 644 F. Supp. 3d 1050 (S.D. Fla. 2022), the Court held that there was no purposeful availment where "[t]he sole relevant contact" between the defendant and Florida was "his alleged online activity visible in Florida". *Id.* at 1055-56 (citing *DCS Real Estate Invs., LLC v. Bella Collina Events, LLC*, No. 5:14-678-CIV, 2015 U.S. Dist. LEXIS 17282, at *3 (M.D. Fla. Feb. 12, 2015)).

Plaintiffs' claims in this case do not arise from Leapfrog's purposeful availment of itself of the privileges of doing business in Florida. *See Louis Vuitton*, 736 F.3d at 1357. Leapfrog's Safety Grades and related statements are published on its websites (**Ex. 1** at ¶46) and thus are accessible in Florida just as they are anywhere with Internet access. But these publications do not serve any commercial purpose, as the Safety Grades and the Survey are both freely accessible to the public. (*See id.* at ¶46; **Ex. 5** at 17; **Ex. 21**; **Ex. 31** at 16).

Although Plaintiffs assert that Leapfrog's Safety Grades are a "pay-for-play scheme" (**Ex. 1** at ¶1), the Complaint fails to allege any "commercial purpose" for Leapfrog's issuance of their "D" and "F" Safety Grades such as "advertising, selling, [or] distributing" goods or services in Florida or to Florida residents. *See Louis Vuitton*, 736 F.3d at 1356; *Toll*, 644 F. Supp. 3d at 1055-56. Nor do Hospital Survey participation or poor Safety Grades benefit Leapfrog financially. Rather, Leapfrog would incur added costs if the five Plaintiff hospitals participated in the Survey as Leapfrog would need to review their Survey responses, and hospitals that earn poor grades do

not license the right to advertise their Grade. The result is that personal jurisdiction does not exist as to Leapfrog in Florida and dismissal is required.

### III. Plaintiffs' Complaint fails to state a claim upon which relief can be granted based on the Florida Deceptive and Unfair Trade Practices Act.[4]

The three elements of a consumer claim under FDUTPA are: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1097 (11th Cir. 2021). Plaintiffs' claim that Leapfrog's Safety Grades and related representations constitute unfair or deceptive trade practices fails for the following reasons.

#### A. Leapfrog's Hospital Safety Grades are not subject to the FDUTPA.

##### i. Leapfrog's alleged conduct lacks a sufficient nexus with Florida for FDUTPA to apply.

The FDUTPA applies only to actions that occur within Florida. *Five for Entertainment S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1330 (S.D. Fla. 2012); *W.W. Sports Importadora Exportadora E Comercial LTDA v. BPI Sports, Ltd. liability Co.*, No. 0:16-cv-60147-WPD, 2016 U.S. Dist. LEXIS 192427, at *16 (S.D. Fla. Aug. 10, 2016). Here, the Complaint fails to plead any conduct by Leapfrog in Florida. Despite its receipt of Survey responses from Florida hospitals, online publication of Safety Grades, and communications with Florida media publications, Leapfrog operates in Washington, D.C. (**Ex. 1** at ¶¶14, 17-18). The result is a lack of a nexus to Florida.

##### ii. The Complaint fails to plead commercial speech.

For the FDUTPA to apply, the alleged violation must also have taken place "in the conduct of any trade or commerce," which is defined as "the advertising, soliciting, providing, offering, or distributing" of goods, services, property, "or any other article, commodity, or thing of value." *Bongino v. Daily Beast Co., LLC*, 477 F. Supp. 3d 1310, 1321 (S.D. Fla. 2020). Where the action

---

[4] This argument section addresses the Complaint's failure to state claim in Count I and II as Count II as both counts are premised entirely on Leapfrog's alleged liability under the FDUTPA.

at issue is the publication of information, the statute applies only to "expression related solely to the economic interests of the speaker and its audience." *Id.* at 1321. Leapfrog's publication of its Safety Grades is not made "in the conduct of any trade or commerce" because the Safety Grades and the Survey are both free to the public. (*See* **Ex. 1** at ¶46; **Ex. 5** at 17; **Ex. 21**; **Ex. 31** at 16). As stated, Leapfrog has no economic interest in awarding Plaintiffs' poor grades, and if anything has more of an economic interest in awarding these hospitals with excellent grades. Accordingly, Plaintiffs' FDUTPA claims fail on this basis alone.

### B. The Complaint fails to plead a "deceptive act" or an "unfair practice".

To violate the FDUTPA, an act or practice must be "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Marrache*, 17 F.4th at 1098. The plaintiff must show that the practice "was likely to deceive a consumer acting reasonably in the same circumstances." *Id.* at 1098.

The holding in *Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 166-67 (Fla. Dist. Ct. App. 2015) is instructive here. In *Caribbean Cruise*, the plaintiff received an "F" grade from the Better Business Bureau of Palm Beach County. *Id.* at 166. The trial court dismissed plaintiff's causes of action for defamation and under the FDUTPA, and the appellate court summarily affirmed dismissal of the defamation claim. *Id.* But the appellate court reversed with respect to the FDUTPA claim and, in doing so, clarified the type of allegations necessary to state a statutory claim and the context. *Id.* The Court's opinion reflects that a letter grade and a speaker's related opinions cannot be deceptive under the FDUTPA. The Court in *Caribbean Cruise* emphasized that there, the plaintiff's claim was not based on the defendant's opinion. *Id*. at 167. Instead, the Court emphasized that its holding was based on the fact that the plaintiff alleged that BBB concealed information about the basis for the grade from the public. *Id.*

Here, by contrast, Plaintiffs do not allege that Leapfrog conceals its grading methodology from the public. Nor are Leapfrog's Safety Grades or related representations because, as discussed above, they are accompanied by a thorough publication of the basis for Safety Grades. (*See, e.g.*, **Ex. 1** at ¶¶80, 88, 92, 95, 98, 101; **Ex. 5**; **Ex. 31**). *See Marrache*, 17 F.4th at 1098. Indeed, Leapfrog's commitment to full transparency precludes any deception in the grading process since any deception would be easily identifiable by hospitals and viewers alike. Notably, Leapfrog's commitment to full transparency extends beyond the calculation of the Safety Grades themselves. Prior to each update of the Safety Grade, hospitals may review the data and methodology used to calculate their grade. (*See* **Ex. 21** at 17-20). This allows hospitals ample opportunity to raise any disputes or discrepancies with Leapfrog's team. Leapfrog also publishes any planned changes to its methodology months in advance and welcomes public comments which are considered in refining the changes. (*See generally* **Ex. 38**). Finally, Plaintiffs' position that Leapfrog's imputation of scores on four out of the 31 measures used to calculate Plaintiffs' Safety Grades is a deceptive practice readily fails in light of the fact that government entities implement a similar methodological approach to missing data.[5]

### C. The Complaint fails to plead "actual damages" as required under the FDUTPA.

"Lost profits, competitive harm, lost sales, and harm to goodwill or reputation are deemed consequential damages which are ineligible to establish actual damages under a FDUTPA claim." *Casa Dimitri Corp. v. Invicta Watch Co. of Am.*, 270 F. Supp. 3d 1340, 1344 (S.D. Fla 2017). While "[a] plaintiff need not be a consumer to assert a FDUTPA claim", the plaintiff must still prove "an injury or detriment to consumers." *Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 860 (11th Cir. 2023).

---

[5] See, e.g., data imputation models implemented by the U.S. Census Bureau, the U.S. Bureau of Labor Statistics, and the U.S. Bureau of Justice Statistics ("Guidelines for Data Transparency, Analysis, and Processing")); each of which this Court can properly take judicial notice. *See Tecnoglass*, *supra*, 301 F. Supp. 3d at 1270, n.1.

While Plaintiffs allege that Leapfrog's Safety Grades have harmed their reputation with patients (**Ex. 1** at ¶¶103-09, 111, 116, 123), this fails to establish actual damages for an FDUTPA claim. *See Casa Dimitri*, 270 F. Supp. 3d at 1344. Plaintiffs also fail to plead "an injury or detriment to consumers", claiming only – and without support – that their poor Safety Grades have harmed patients by motivating them to choose to receive emergency care at hospitals located further away from them than Plaintiffs' hospitals. (*Id.* at ¶¶113-14, 123, 128). Critically, while patients may seek care wherever they choose, Leapfrog expressly warns viewers that "***[y]ou should never refuse care in an emergency because of a hospital's Safety Grade***". (**Ex. 17** at 4). Accordingly, the Complaint is properly dismissed with prejudice for its failure to state a claim under the FDUTPA.

**IV. Dismissal is further required (and fees and costs may be awarded) under Florida's Anti-SLAPP statute.**

Florida law prohibits Strategic Lawsuits Against Public Participation ("SLAPP") lawsuits, which are suits filed "without merit" and "primarily" because the person against whom the suit was filed "exercised the constitutional right of free speech in connection with a public issue". *Bongino*, 477 F. Supp. 3d at 1321 (citing Fla. Stat. § 768.295(3)). The statute awards a defendant fees and costs if a plaintiff files a forbidden suit. *Id.* (citing Fla. Stat. § 768.295(4)). The fee-shifting provision may apply in a federal court exercising diversity jurisdiction. *Id.* at 1324.

Plaintiffs' claims arise entirely from Leapfrog's Hospital Safety Grades – online, public commentary on the matter of patient safety in hospitals – which is undeniably a matter of public concern. For the reasons set forth above, Plaintiffs' claims constitute precisely the type of meritless, retaliatory action the Anti-SLAPP statute seeks to deter. Accordingly, to the extent this Court grants its Motion, Leapfrog requests leave of Court to move for its fees and costs pursuant to Fla. Stat. § 768.295(4), which mandates an award to prevailing defendants in Anti-SLAPP proceedings.

## CONCLUSION

WHEREFORE, Defendant The Leapfrog Group respectfully requests that this Court (1) grant its Motion; (2) dismiss Plaintiffs' Complaint in its entirety, with prejudice; (3) grant Leapfrog leave to file a motion for recovery of attorneys' fees and costs pursuant to Fla. Stat. § 768.295(4); and (4) for such further relief as this Court deems just and proper.

Date: June 27, 2025

Respectfully submitted,

*Kimberly E. Blair*

**Kimberly E. Blair**
kimberly.blair@wilsonelser.com
Illinois Bar ID # 6272934
**Thomas K. Duff**
thomas.duff@wilsonelser.com
Illinois Bar ID # 6343056
Wilson Elser Moskowitz Edelman & Dicker LLP
161 N. Clark, Ste. 4500
Chicago, IL 60601
312.821.6139 (Direct)
312.704.0550 (Main)
(312) 259-6414 (Cell)
*Attorneys for Defendant, The Leapfrog Group*

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2025, a true and correct copy of the foregoing was served via CM/ECF on all counsel or parties of record.

By: /s/ *Thomas K. Duff*
THOMAS DUFF, ESQ.