UNITED STATES DISTRIC COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-80526-CV-MIDDLEBROOKS

GOOD SAMARITAN MEDICAL CENTER,
INC., DELRAY MEDICAL CENTER, INC.,
PALM BEACH GARDENS COMMUNITY
HOSPITAL, INC. D/B/A PALM BEACH
GARDENS MEDICAL CENTER, ST.
MARY'S MEDICAL CENTER, INC., AND
WEST BOCA MEDICAL CENTER, INC.,

    Plaintiffs,

v.

THE LEAPFROG GROUP,

    Defendant.

_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court on Defendant's Motion to Dismiss,[1] filed on June 27, 2025. (DE 39). Plaintiffs filed a Response on July 11, 2025. (DE 40). No Reply has been filed, but I find no Reply to be necessary. For the following reasons, the Motion is denied.

## BACKGROUND

This matter arises from numerous claims of false and deceptive trade practices in hospital safety ratings. (DE 1). Because this cause comes before the Court on a Motion to Dismiss, I accept all facts in the Plaintiff's Amended Complaint as true and construe them in the light most favorable to the Plaintiff. *See Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004).

---

[1] I note that for purposes of this Order, I do not consider the exhibits attached to the instant Motion or the Response, as both Parties have attempted to interject documents that fall outside the four corners of the Complaint. *See Boyd v. Peet*, 249 F. App'x 115, 157 (11th Cir. 2007). The Parties' efforts effectively seek to transform this matter from one of dismissal to one of summary judgment, and I decline at this stage to parse through the voluminous exhibits submitted on that basis.

Plaintiffs are a coalition of hospitals operating in south Florida (the "Hospitals"). They claim that Defendant The Leapfrog Group ("Leapfrog" or "TLG"), a registered non-profit with its headquarters in Washington, D.C., operates a "brazen pay-to play scheme that distorts the truth, misleads patients, and inflicts serious harm on hospitals and the communities they serve." (DE 1 at 2). The core allegations involve Leapfrog's online "Hospital Safety Grades," which it publishes on its website www.hospitalsafetygrade.org, and advertises through a secondary website www.leapfroggroup.org. (*Id.* ¶ 46). The safety grades, which include standard assignments of "A," "B," "C," "D," and "F" distinguish hospitals from best to worst care quality, using an aggregate of 22 national patient safety measures. (*Id.* ¶ 48). For at least 12 of these measures, Leapfrog relies on hospitals' self-reported answers to a hospital survey, which involves a lengthy questionnaire spanning over 100 pages. (*Id.* ¶¶ 1, 48).

The trouble underlying Plaintiffs' claims concerns what happens when a hospital fails to participate in Leapfrog's hospital survey. According to Plaintiffs, in the absence of self-reported information from hospitals, Leapfrog finds alternative methods to calculate the values of the 12 safety measures that ordinarily rely on survey data. Leapfrog uses government data for 5 measures, and discards 3 measures entirely from its overall grading. (*Id.* ¶ 49). The crux of Plaintiffs' Complaint focuses on the remaining 4 measures, for which Leapfrog employs an "imputational model" to assign values. Prior to Fall 2024, Plaintiffs assert this "imputational model" relied on an "average score applicable to similarly situated hospitals." (*Id.* ¶ 50). Beginning in Fall 2024 however, Leapfrog allegedly began automatically assigning the lowest possible value to non-participating hospitals in its imputational model, deflating scores across the 4 metrics. (*Id.*). Plaintiffs claim this change was designed to punish hospitals for not participating in TLG's survey, from which it collects and monetizes data for a substantial profit. (*Id.* ¶¶ 70-75).

Plaintiffs filed their Complaint on April 30, 2025, asserting two counts for violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 et seq. (Count I) and declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, (Count II).

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the allegations in a complaint. *See* Fed. R. Civ. P. 12(b)(6). In assessing legal sufficiency, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must … contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cty. Bd. of Educ. V. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)).

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and assume the truth of the plaintiff's factual allegations. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). However, pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," *Iqbal*, 556 U.S. at 678; *see also Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (stating that an unwarranted deduction of fact is not considered true for purposes of determining

3

whether a claim is legally sufficient). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Separately, a motion to dismiss brought under Rule 12(b)(2) challenges the court's personal jurisdiction over a party. The plaintiff ordinarily has the burden of establishing a *prima facie* case of personal jurisdiction over a nonresident defendant. *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268–69 (11th Cir. 2002).[2] "A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). Sometimes, a court need not analyze both steps, as each step may prove dispositive. *See id.*; *Lawson Cattle & Equipment, Inc. v. Pasture Renovators LLC*, 139 F. App'x 140, 142 (11th Cir. 2005).

Under the first prong of the analysis, "it must be determined that the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of" Florida's long-arm statute. *Venetian Salami Co. v. Parthenais*, 554 So.2d 499, 502 (Fla. 1989). "Florida's long-arm statute is to be strictly construed." *Sculptchair, Inc. v. Century Arts., Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996) (citing *Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 891 (11th Cir. 1983)). "When a defendant raises through affidavits, documents or testimony a meritorious challenge to personal jurisdiction, the burden shifts to the plaintiff to prove jurisdiction by

---

[2] "A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1999).  If a plaintiff submits evidence supporting his jurisdictional position, the Court must still accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *Meier*, 288 F.3d at 1269 ("Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff.").

affidavits, testimony or documents." *Id.* (quoting *Jet Charter Serv., Inc. v. Koeck*, 907 F.2d 1110, 1112 (11th Cir. 1990)). Florida's long-arm statute provides in relevant part:

> (1) (a) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself ... to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
>   1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
>   2. Committing a tortious act within this state. . . .

Fla. Stat. § 48.193. Under the statute's plain terms, each enumerated action constitutes a sufficient basis for the exercise of jurisdiction, subject to demands of constitutional due process.

## DISCUSSION

Defendant seeks dismissal of the Complaint on three general grounds: (1) that its online grading and methodology are protected by the First Amendment, (2) that it is not subject to personal jurisdiction in Florida, and (3) that Plaintiffs have failed to state a claim under FDUTPA. I find none of these contentions persuasive.

First, Defendant claims its online grades and methods are protected as unfalsifiable, purely opinionated speech. The First Amendment protects "statements that are not readily capable of being proven false" and "statements of pure opinion." *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018). Some courts have recognized that these principles extend to online grading services, which often rely on a subjective weighing of objective data. *See, e.g.*, *Home Performance Alliance v. Better Business Bureau of West Florida*, 354 So. 3d 1165, 1166 (Fla. 2nd DCA 2023) (finding a D+ rating of plaintiff's business to be a nonactionable opinion). However, as is evident in several of the cases Defendant cites, a claim brought pursuant to the FDUTPA is not barred by the First Amendment when it involves a challenge to false or misleading statements made about the rating

process itself. *See id.* at 1167 ("In addition to disputing its rating, Home Performance also alleges that the BBB makes false statements about its ratings process."); *see also Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*, 169 So. 3d 164, 167 (Fla. 4th DCA 2015) ("These are not disputes with opinions issued by BBB, but instead, are disputes with the representations that BBB makes, and the methods it employs, in conducting its own business." (citing *From v. Tallahassee Democrat, Inc.*, 400 So.2d 52, 57 (Fla. 1st DCA 1981))). Here, Plaintiffs' action arises from a challenge to Defendant's representations about its methodology, which they claim mislead consumers by failing to distinguish between absent data and damning data, and professing that grades are not influenced by a hospital's lack of survey participation. (*Id.* ¶¶ 49–54, 55, 63). Defendant's First Amendment defenses are thereby inapplicable.

Second, Defendant contends this Court lacks personal jurisdiction under both Florida's long-arm statute and the Constitution's "minimum contacts" test, as its website is a national publication, and its primary business activities occur within the District of Columbia. This argument is also unavailing. Subsection (1)(a)(2) of Florida's long-arm statute creates specific jurisdiction over actions arising out of tortious acts committed in Florida, which extends to allegations that a Florida resident suffered injury from violations of the FDUTPA. *See Execu-Tech Business Sys., Inc. v. New Oji Paper Co. Ltd*., 752 So. 2d 582, 585 (2000) (holding that violation of FDUTPA is a tortious act for purposes of Fla. Stat. § 48.193(1)(b)); *Posner v. Essex Ins. Co., Ltd*., 178 F.3d 1209, 1217 (11th Cir. 1999); *Becker v. Hooshmand*, 841 So. 2d 561, 562 (Fla. 4th DCA 2003). Because Plaintiffs have alleged harm to Florida consumers, the statute is plainly satisfied. Further, this finding comports with the demands of due process, as the Complaint establishes minimum contacts between Leapfrog and Florida. Beyond the mere publication of its website, Leapfrog solicits data from Florida hospitals, markets itself through Florida media, and

communicates with Florida consumers. (DE 1 ¶¶ 17–18, 46). As such, there are sufficient contacts between Leapfrog and Florida, from which this action arises, to conclude that Leapfrog has availed itself of the privilege of conducting activities within Florida, thereby invoking the benefit of its laws. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013).

Third and finally, Defendant insists Plaintiffs have failed to state a claim under FDUTPA. To state a claim of deceptive or misleading trade practices, a plaintiff must allege "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1097 (11th Cir. 2021). Defendant challenges the Complaint in several ways, including by asserting that the FDUTPA only applies to actions that occur in Florida, that the violation must have taken place "in the conduct of any trade or commerce," that the practice must be likely to deceive a consumer acting reasonably in the same circumstances, and that actual damages of lost profits or sales are required. (DE 39 at 18-20). Defendant contends that the Complaint fails on one or all of these grounds. I am not convinced.

The Florida legislature has instructed that "unfair" or "deceptive" conduct under the FDUTPA is to be "liberally construed." Fla. Stat. § 501.202(2). Here, Plaintiffs have alleged that Defendant arbitrarily assigned poor safety ratings to hospitals, then lied to consumers about how it calculates overall grades. (DE 1 ¶¶ 49–54, 87–101). At this stage, taking all allegations as true, this qualifies as a deceptive act or unfair practice. *See Caribbean Cruise*, 169 So. 3d at 167. Moreover, this conduct was directed at Florida consumers and involved Florida hospitals, plainly falling within the ambit of the FDUTPA. Defendant's actions also implicate "trade or commerce," in that Plaintiffs allege Defendant provides a clear service from the publication of safety grades. *See* Fla. Stat. § 501.203(8) (defining "trade or commerce" as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any *good or service*, or any

property, whether tangible or intangible, or any other article, commodity, or thing of value," including "any non-profit or not-for-profit person or activity" (emphasis added)). Finally, Plaintiffs have pled actual damages in the form of reputational harm. *See Marco Island Cable v. Comcast Cablevision of S., Inc.*, 312 F. App'x 211, 214 (11th Cir. 2009). This amounts to a full claim.

## CONCLUSION

Having fully considered the three grounds cited in Defendant's Motion to Dismiss, I find that none compel dismissal under Federal Rules 12(b)(6) or 12(b)(2). Accordingly, it is **ORDERED AND ADJUDGED** that the Motion to Dismiss (DE 39) is **DENIED**.

**SIGNED** in Chambers at West Palm Beach, Florida, this the 15th day of July, 2025.

Donald M. Middlebrooks
United States District Judge