IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 9:25-CV-80526-DMM

GOOD SAMARITAN MEDICAL
CENTER, INC., et al.,

        *Plaintiffs*,

    v.

THE LEAPFROG GROUP,

        *Defendant*.

## THE COMMUNITY HOSPITALS' VERIFIED MOTION FOR ATTORNEYS' FEES AND COSTS

Jeffrey Marcus, Bar # 310890
Michael Pineiro, Bar # 41897
Daniel Rashbaum, Bar # 75084
MARCUS RASHBAUM PINEIRO & MEYERS LLP
2 South Biscayne Boulevard
Suite 2530
Miami, FL  33131
(305) 400-4268
jmarcus@mrpfirm.com
mpineiro@mrpfirm.com
drashbaum@mrpfirm.com

Jeffrey Neiman, Bar # 544469
Brandon S. Floch, Bar # 125218
NEIMAN MAYS FLOCH & ALMEIDA PLLC
100 SE 3rd Avenue
Suite 805
Fort Lauderdale, FL  33394
(954) 462-1200
jneiman@nmfalawfirm.com
bfloch@nmfalawfirm.com

Mary Beth Maloney (*pro hac vice*)
Lee R. Crain (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166
(212) 351-4000
mmaloney@gibsondunn.com
lcrain@gibsondunn.com

Daniel P. Chung (*pro hac vice*)
Helgi C. Walker (*pro hac vice*)
Christine M. Buzzard (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036
(202) 955-8500
dchung@gibsondunn.com
hwalker@gibsondunn.com
cbuzzard@gibsondunn.com

Sydney Scott (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
811 Main Street #3000
Houston, TX 77002
(346) 718-6600
sascott@gibsondunn.com

Scott K. Hvidt (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX  75201
(214) 698-3100
shvidt@gibsondunn.com

*Attorneys for the Community Hospitals*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ......................................................................................................................... 1

BACKGROUND .......................................................................................................................... 2

LEGAL STANDARD................................................................................................................... 5

ARGUMENT ............................................................................................................................... 5

    I.      The Community Hospitals Are Entitled To Fees And Costs Under FDUTPA ............ 5

           A.      The Community Hospitals Are Prevailing Parties............................................. 6

           B.      The Equitable Factors Strongly Support An Award Of Fees And Costs.......... 7

    II.     The Attorneys' Fees Sought By The Community Hospitals Are Reasonable ............ 13

           A.      The Hourly Billing Rates Are Reasonable........................................................ 13

           B.      The Total Hours Expended Are Reasonable..................................................... 17

    III.    The Costs Sought By The Community Hospitals Are Reasonable............................ 19

CONCLUSION........................................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*ACLU v. Barnes*,
 168 F.3d 423 (11th Cir. 1999) ...............................................................................................18

*Akai Custom Guns, LLC v. KKM Precision, Inc.*,
 2025 WL 2663071 (S.D. Fla. Aug. 29, 2025)..........................................................................18

*Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic*,
 2020 WL 6808856 (S.D. Fla. Apr. 16, 2020) ...........................................................................20

*Berk v. Choy*,
 146 S. Ct. 546 (2026).................................................................................................................6

*Bluegreen Vacations Unlimited, Inc. v. Timeshare Lawyers P.A.*,
 2024 WL 3738890 (S.D. Fla. July 18, 2024).......................................6, 7, 11, 12, 18, 19, 20

*Cable/Home Commc'n Corp. v. Network Prods., Inc.*,
 902 F.2d 829 (11th Cir. 1990) .................................................................................................13

*Chow v. Chak Yam Chau*,
 640 F. App'x 834 (11th Cir. 2015) (unpublished) ......................................................5, 6, 7, 19

*City of Riverside v. Rivera*,
 477 U.S. 561 (1986)..................................................................................................................18

*Democratic Republic of Congo v. Air Cap. Grp.*,
 2016 WL 11739606 (S.D. Fla. Sept. 29, 2016) .........................................................................7

*Diamond Aircraft Indus., Inc. v. Horowitch*,
 107 So. 3d 362 (Fla. 2013).....................................................................................................5, 6

*Domond v. PeopleNetwork APS*,
 750 F. App'x 844 (11th Cir. 2018) ..........................................................................................19

*Environmental Manufacturing Solution, LLC. v. Peach State Labs, Inc.*,
 274 F. Supp. 3d 1298 (M.D. Fla. 2017)...................................................................................20

*Epic Sys. Corp. v. Decapolis Sys., LLC*,
 2024 WL 5236912 (S.D. Fla. Nov. 25, 2024)..........................................................................14

*Flexiteek Ams., Inc. v. Plasteak, Inc.*,
 2016 WL 7497485 (S.D. Fla. Feb. 4, 2016) ............................................................................18

*Fox v. Vice*,
 563 U.S. 826 (2011)..................................................................................................................13

*FTC v. Corpay, Inc.*,
 164 F.4th 807 (11th Cir. 2026) ................................................................................................12

**TABLE OF AUTHORITIES**
(*continued*)

**Page(s)**

*Glob. Digital Sols., Inc. v. Grupo Rontan Electro Metalurgica, S.A.*,
 2021 WL 7630524 (S.D. Fla. Aug. 16, 2021)...............................................................13

*Gov't Emps. Ins. Co. v. Right Spinal Clinic, Inc.*,
 2025 WL 1644541 (M.D. Fla. May 15, 2025)...........................................................9, 10

*Healthcare Res. Mgmt. Grp., LLC v. EcoNatura All Healthy World, LLC*,
 2022 WL 1537757 (S.D. Fla. May 12, 2022) ............................................................9, 13

*Herbst v. Am. Orthodontics Corp.*,
 2025 WL 3755394 (S.D. Fla. Jan. 23, 2025) .............................................................13

*HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*,
 2018 WL 1863778 (M.D. Fla. Mar. 26, 2018) ............................................................8

*Humane Soc. of Broward County, Inc. v. Fla. Humane Soc.*,
 951 So. 2d 966 (Fla. 4th DCA 2007) .......................................................................7

*Infogroup Inc. v. Off. Depot Inc.*,
 2024 WL 4110526 (S.D. Fla. Aug. 21, 2024)............................................................14

*Johnson v. Georgia Highway Express, Inc.*,
 488 F.2d 714 (5th Cir. 1974) ...................................................................................14

*M.G.B. Homes, Inc. v. Ameron Homes, Inc.*,
 30 F.3d 113 (11th Cir. 1994) ....................................................................................6

*Mallory v. Harkness*,
 923 F. Supp. 1546 (S.D. Fla. 1996) .........................................................................14

*Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*,
 2021 WL 1200422 (S.D. Fla. Mar. 5, 2021)..............................................................13

*Maxitransfers LLC v. La Casita Envios Corp.*,
 2025 WL 3091153 (S.D. Fla. July 29, 2025)..............................................................14

*Moritz v. Hoyt Enters., Inc.*,
 604 So. 2d 807 (Fla. 1992)........................................................................................6

*Morrison v. Reichhold Chemicals, Inc.*
 97 F.3d 460 (11th Cir. 1996) ...................................................................................20

*Norman v. Hous. Auth. of Montgomery*,
 836 F.2d 1292 (11th Cir. 1988) ...............................................................13, 14, 18, 19

*Procaps S.A. v. Patheon*,
 2017 WL 3536917 (S.D. Fla. 2017) .........................................................................14

# TABLE OF AUTHORITIES
## (*continued*)

**Page(s)**

*Procaps S.A. v. Patheon Inc.*,
    157 F. Supp. 3d 1199 (S.D. Fla. 2016) ................................................................................6, 7

*Sprint Commc'ns, LLC v. Calabrese*,
    2025 WL 713048 (S.D. Fla. Feb. 20, 2025) .....................................................................14, 20

*Standard Guar. Ins. Co. v. Quanstrom*,
    555 So. 2d 828 (Fla. 1990)...................................................................................................5

*Temurian v. Piccolo*,
    2021 WL 1121003 (S.D. Fla. Mar. 24, 2021)........................................................................7

*Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*,
    253 F.3d 1332 (11th Cir. 2001) ............................................................................................6

*Tropical Paradise Resorts, LLC v. JBSHBM, LLC*,
    2021 WL 2269822 (S.D. Fla. Apr. 30, 2021) ........................................................................9

*Trump v. Clinton*,
    653 F. Supp. 3d 1198 (S.D. Fla. 2023) .............................................................................14, 20

*U.S. Sugar Corp. v. Com. & Indus. Ins. Co.*,
    2023 WL 4953191 (S.D. Fla. Aug. 3, 2023)........................................................................14

*Unisource Discovery, Inc. v. Unisource Discovery, LLC*,
    2023 WL 4187094 (S.D. Fla. June 9, 2023) .....................................................................19, 20

*Warren Tech., Inc. v. UL LLC*,
    2020 WL 9219127 (S.D. Fla. Dec. 17, 2020)......................................................................11

## Statutes

28 U.S.C. § 1920...............................................................................................................19

Fla. Stat. § 501.2105 ............................................................................................................5

## Rules

Federal Rule of Civil Procedure 54(d)(2)(B)........................................................................6

S.D. Fla. L.R. 7.3 ................................................................................................................6

iv

**INTRODUCTION**

This Court found that Defendant The Leapfrog Group's ("Leapfrog") challenged grading scheme "has no scientific basis, unfairly penalizes non-participating hospitals, and misrepresents hospital safety" and that its Safety Grades and related public representations were deceptive and unfair under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). ECF 212 at 2–3. Each of the five prevailing community hospitals—Delray Medical Center, Good Samaritan Medical Center, Palm Beach Gardens Medical Center, St. Mary's Medical Center, and West Boca Medical Center (the "Community Hospitals")—respectfully seeks an award of approximately $2 million in reasonable attorneys' fees and costs incurred to prosecute this action. Collectively, the Community Hospitals seek an award of $10,499,880.47 in reasonable attorneys' fees and litigation costs. That figure reflects the lodestar for work reasonably required to litigate this expedited five-plaintiff FDUTPA action through discovery, expert proceedings, dispositive and evidentiary motions, a five-day bench trial, post-trial briefing, and final judgment as well as associated costs. The hospitals do not seek a multiplier, premium, or sanction-based enhancement.

An award of fees and costs is not only warranted under FDUTPA; it is necessary to effectuate the statute's purpose of deterring deceptive and unfair practices and encouraging private enforcement. The Community Hospitals brought this action to stop a grading scheme this Court held unlawful. Requiring them to absorb the full expense of doing so would undermine the statute's deterrent and remedial purposes and would leave the victims of that conduct to finance the relief the Court ordered. Fee shifting is especially appropriate here because the Community Hospitals sought only equitable relief.

The amount sought is reasonable. This was a complex case litigated on an expedited schedule—going from filing through trial in approximately eight months. Although filed in a single action, it required counsel to represent five separate plaintiff hospitals, each of which had to prove its own entitlement to relief through hospital-specific evidence, witnesses, and proof of harm, while also litigating common issues concerning Leapfrog's methodology, defenses, experts, and equitable relief. The requested amount reflects an appropriate lodestar, is supported by detailed billing records, and is consistent with prevailing market rates in this District. And the requested amount reflects the exercise of billing judgment, including through the omission of certain time-keepers and time entries.

The amount requested also reflects the burdens imposed by Leapfrog's litigation conduct. On a compressed schedule, Leapfrog served late and overbroad discovery, produced nearly one million documents without a responsiveness review, failed to timely provide an adequate privilege log, forced motion practice to secure basic discovery compliance, and shifted positions and public-facing statements while the case was pending. The resulting fees and costs were reasonably necessary to litigate this case through trial and obtain complete relief. Leapfrog's litigation ploys have continued to drive up costs even after entry of final judgment. Indeed, days before its deadline to appeal, Leapfrog filed a baseless motion for reconsideration asserting a number of barred, abandoned, forfeited, or otherwise meritless arguments that the Community Hospitals were forced to rebut. Though the Community Hospitals continue to incur fees due to Leapfrog's litigation tactics, they do not seek to recover those costs through this Motion.

The Court should therefore award each Community Hospital approximately $2 million in reasonable attorneys' fees and costs, for a total award of $10,499,880.47.

## BACKGROUND

The Community Hospitals investigated Leapfrog's methodology, then engaged in extensive correspondence with Leapfrog between January and April of 2025 seeking to avoid litigation in this matter. Leapfrog repeatedly rebuffed these efforts to avoid litigation. *See, e.g.*, PX-562; DX-931. Left with no other choice, on April 30, 2025, the Community Hospitals filed this action against Leapfrog, asserting a single claim of deceptive and unfair trade practices under FDUTPA. *See* ECF 1. The Community Hospitals challenged Leapfrog's publication of Safety Grades that purported to measure actual hospital safety, but as this Court found, relied on a methodology that "has no scientific basis, unfairly penalizes nonparticipating hospitals, and misrepresents hospital safety." ECF 212 at 2; *see also* ECF 1. The Court set an expedited schedule culminating in a January 2026 trial. *See* ECF 32.

Leapfrog moved to dismiss the Complaint, arguing that its Safety Grades and methodology were protected opinion under the First Amendment, that the Court lacked personal jurisdiction over Leapfrog, and that the Complaint failed to state a FDUTPA claim. *See* ECF 39. The Court denied the motion in full. *See* ECF 41. The Community Hospitals later amended their Complaint to withdraw any request for monetary relief and to seek only injunctive and declaratory relief, thereby narrowing the case for discovery and trial. *See* ECF 54, 74.

Extensive and expedited discovery followed.  Leapfrog served belated discovery requests, requiring the Community Hospitals to begin preparing document productions before receiving Leapfrog's requests to ensure their ability to meet the discovery deadline.  Then, after Leapfrog finally served its requests—on July 11, 2025, less than two weeks before the substantial completion deadline—the Community Hospitals were required to revise and substantially redo their prior work to conform the production to Leapfrog's actual requests, thereby increasing attorney time and effort.  Leapfrog ultimately served 64 requests for production and 24 interrogatories on each of the five hospitals, totaling 320 RFPs and 120 interrogatories.  ECF 55-4, 55-5–9, 55-10–14.

Leapfrog's discovery requests were also overbroad, seeking extensive information about the Community Hospitals' quality of care—an issue unrelated to the methodology challenged in this case.  After negotiations to narrow the discovery requests failed, the Community Hospitals moved for a protective order.  *See* ECF 55.  The parties negotiated a solution following a hearing before Judge Matthewman.  *See* ECF 70, 76.

Ultimately, the Community Hospitals produced approximately 3,300 documents after conducting a responsiveness review.  Leapfrog, by contrast, produced nearly *one million* documents in response to the Community Hospitals' 36 narrowly tailored document requests.  When questioned regarding the volume of the documents—hundreds of thousands of which were wholly irrelevant—Leapfrog admitted that it had not conducted a responsiveness review.  Leapfrog did not offer to re-review the documents, requiring the Community Hospitals to take on the burden of that review.  Nor did Leapfrog timely produce a compliant privilege log.  Its belated submission included both responsive and non-responsive documents, failed to identify which listed individuals were attorneys, omitted privilege descriptions, and more.

The parties took more than twenty depositions, including both fact and expert witnesses, within less than six weeks.  The accelerated schedule was driven in significant part by Leapfrog's delay in serving its requests for production and the overbroad nature of those requests, which required the parties to first resolve document-related issues before proceeding.  As a result, multiple depositions had to be postponed and then rescheduled on a compressed timeline once document-production disputes were addressed.  The five-plaintiff structure of the case also mattered throughout discovery: each Community Hospital had its own leadership, documents, patient and community feedback, and evidence of harm arising from Leapfrog's Safety Grades.

The case involved extensive third-party discovery as well.  The Community Hospitals subpoenaed, among others, Dr. Patrick Romano, a professor at the University of California, Davis School of Medicine and member of Leapfrog's Safety Grade Expert Panel, and Dr. Matthew Austin, principal faculty member of the Armstrong Institute for Patient Safety at Johns Hopkins Medicine and Leapfrog consultant.  Leapfrog issued more than a dozen third-party subpoenas of its own, further expanding the scope of discovery.

After the close of discovery, the parties filed numerous substantive motions.  These included cross-motions for summary judgment, motions in limine to exclude expert testimony, and Leapfrog's omnibus motion in limine seeking to exclude broad categories of evidence—including several key pieces of evidence the Court relied upon in its post-trial opinion.  *See* ECF 86, 96, 97, 98, 99, 212.  The motions spanned more than 300 pages, including responses and replies.  On November 13, 2025, when motion practice had just begun, the parties appeared for a mediation conference before Judge Matthewman.  *See* ECF 106.  Again, Leapfrog refused to compromise, and the litigation continued.  *Id*.  The Court subsequently denied the parties' summary judgment motions and declined to exclude the challenged evidence.  *See* ECF 139, 151, 169, 176.

A five-day bench trial followed.  The Community Hospitals were required to prove not only Leapfrog's common course of deceptive and unfair conduct, but also plaintiff-specific injury and entitlement to equitable relief as to each of the five Community Hospitals.  To do so, the Community Hospitals prepared and presented extensive documentary and testimonial evidence concerning Leapfrog's methodology, public representations, and punitive treatment of non-participating hospitals.  They also presented live testimony from the CEO of each Community Hospital, each of whom was cross-examined about the effect of Leapfrog's Grades on his or her hospital.  That testimony addressed, among other things, the reputational injury, patient and community reaction and harm, physician and payer concerns, and the operational consequences experienced by each hospital as a result of the challenged Grades.  The trial therefore required counsel to litigate both common issues and five separate factual records concerning harm.

Following trial and with the benefit of the parties' lengthy post-trial submissions, the Court ruled in favor of the Community Hospitals and granted injunctive relief.  *See* ECF 212.  In a detailed opinion, the Court found that Leapfrog's Safety Grades violated FDUTPA because they were based on a methodology that "has no scientific basis, unfairly penalizes nonparticipating hospitals, and misrepresents hospital safety."  *Id.* at 2.  The Court further found that Leapfrog's

grading system resulted in "the false impression that Leapfrog's grades reflect actual performance." *Id.* at 26. And it held that Leapfrog's practices "produced real harms [that] are likely to continue in the future." *Id.* at 37. Based on these findings, the Court enjoined Leapfrog from continuing the challenged conduct and, on April 6, 2026, entered judgment for the Community Hospitals on their sole claim. *See id.* at 40–41; ECF 214.

## LEGAL STANDARD

"To encourage citizens to invoke the protections of FDUTPA and file actions under that statute, the Legislature has provided that a prevailing party in a FDUTPA action may recover reasonable costs and attorney's fees from the nonprevailing party." *Chow v. Chak Yam Chau*, 640 F. App'x 834, 837 (11th Cir. 2015) (quoting *Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So. 3d 362, 367 (Fla. 2013)). Specifically, "the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the nonprevailing party." Fla. Stat. § 501.2105(1). Under FDUTPA, "[t]he trial judge may award the prevailing party the sum of reasonable costs incurred in the action plus a reasonable legal fee for the hours actually spent on the case as sworn to in an affidavit." *Id.* § 501.2105(3).

## ARGUMENT

### I.      The Community Hospitals Are Entitled To Fees And Costs Under FDUTPA

FDUTPA authorizes fee awards to prevailing parties so that the price of enforcing the statute does not fall solely on those harmed by deceptive and unfair practices. *See Diamond Aircraft*, 107 So.3d at 367–68 (citing Fla. H.R. Comm. on Governmental Operations, HB 1915 (1973), Staff Analysis 3–4 (May 3, 1973); *Standard Guar. Ins. Co. v. Quanstrom*, 555 So.2d 828, 833 (Fla. 1990)); *see also Chow*, 640 F. App'x at 837 (applying the *Diamond Aircraft* framework). This case fits that purpose squarely.

After expedited proceedings and a five-day bench trial, the Court found that Leapfrog's challenged grading methodology is an unfair penalty for nonparticipation that misrepresents hospital safety. ECF 212 at 2. The Court further held that Leapfrog's challenged Safety Grades and related public representations were deceptive and unfair under FDUTPA, entered declaratory relief, and enjoined Leapfrog's continued use of the challenged methodology as to the Community Hospitals. *See id.* at 24–28, 40–41. This motion therefore does not ask the Court to impose a penalty untethered to the statute or the record. It asks the Court to apply FDUTPA's fee-shifting provision in the ordinary way after a complete victory.

An award here is warranted not only because the Community Hospitals prevailed, but because requiring them to absorb the full cost of obtaining that relief would undercut FDUTPA's deterrent and remedial purposes.  The Community Hospitals sought no damages.  They undertook the burden of stopping a grading scheme this Court held unlawful.  FDUTPA does not require the victims of deceptive and unfair conduct to finance the litigation necessary to halt such conduct.

## A.    The Community Hospitals Are Prevailing Parties

There is no serious dispute that the Community Hospitals prevailed.  Under FDUTPA, a party prevails when it succeeds on the significant issues in the litigation and obtains the benefit sought in bringing suit.  *Chow*, 640 F. App'x at 839 (citing *Moritz v. Hoyt Enters., Inc.*, 604 So. 2d 807, 810 (Fla. 1992)); *Diamond Aircraft*, 107 So. 3d at 368.  That is what occurred here.

Following a five-day trial, the Community Hospitals prevailed on their sole claim and obtained the declaratory and injunctive relief they sought.  *See* ECF 212, 214.  The Court entered judgment in their favor and declared that Leapfrog's challenged Safety Grades, public representations, and punitive grading methodology were deceptive and unfair under FDUTPA.  *See* ECF 212 at 40–41.  Because each of the five Community Hospitals obtained that relief, each is a prevailing party under FDUTPA.  *See Bluegreen Vacations Unlimited, Inc. v. Timeshare Laws. P.A.*, 2024 WL 3738890, at *1, *5 (S.D. Fla. July 18, 2024) ("*Bluegreen Vacations I*"), *report and recommendation adopted*, 2024 WL 4297089 (S.D. Fla. Sep. 26, 2024) ("*Bluegreen Vacations II*") (finding party that prevailed on all claims at trial, including a FDUTPA claim, to be "prevailing party" under FDUTPA).

This motion is also timely.  Local Rule 7.3 requires fee motions to be filed within sixty days of final judgment "regardless of the prospect or pendency of supplemental review or appellate proceedings."  S.D. Fla. L.R. 7.3(a)(1).  The Community Hospitals therefore advance this motion now to comply with that Rule and submit that the Motion should be heard and resolved.  If the Court concludes that the Motion should await the resolution of any appeal, the Community Hospitals respectfully request that the Motion be held in abeyance rather than denied as premature.[1]

---

[1] Under new Supreme Court precedent, federal—and not state FDUTPA—rules apply to the timing of this motion.  Earlier decisions treated FDUTPA's exhaustion-of-appeals language as controlling in federal court.  *See M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 30 F.3d 113, 115 (11th Cir. 1994); *Procaps S.A. v. Patheon Inc.*, 157 F. Supp. 3d 1199, 1200 (S.D. Fla. 2016).  But *Berk v. Choy* recently clarified that, when a valid Federal Rule of Civil Procedure answers the disputed timing question, it governs notwithstanding contrary state law.  607 U.S. 187, 191–97 (2026).  That is the case here.  Federal Rule of Civil Procedure

**B.     The Equitable Factors Strongly Support An Award Of Fees And Costs**

Once a party is found to have prevailed under FDUTPA, the Court has discretion to award attorneys' fees and costs after considering the established equitable factors:  "(1) the scope and history of the litigation; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter others from acting in similar circumstances; (4) the merits of the respective positions—including the degree of the opposing party's culpability or bad faith; (5) whether the claim brought was not in subjective bad faith but frivolous, unreasonable, [or] groundless; (6) whether the defense raised a defense mainly to frustrate or stall; [and] (7) whether the claim brought was to resolve a significant legal question under FDUTPA law." *Bluegreen Vacations II*, 2024 WL 4297089, at *3 (S.D. Fla. Sep. 26, 2024) (quoting *Chow*, 640 F. App'x at 838–39); *see also Humane Soc'y of Broward Cnty., Inc. v. Fla. Humane Soc'y*, 951 So. 2d 966, 971–72 (Fla. 4th DCA 2007) (articulating this test).  These factors strongly support an award here.

*1. Scope and History of Litigation.*  This factor strongly favors an award.  Courts adjudicating a fees motion first consider the scope and procedural history of the litigation, "focus[ing] on the parties' respective positions and litigation tactics throughout the entire case." *Bluegreen Vacations I*, 2024 WL 3738890, at *6.  They assess whether the case progressed to later-stage proceedings and involved significant motion practice; the length of the litigation; whether the FDUTPA claim was an important element of the case; and whether the conduct of the nonprevailing party was unreasonable. *See, e.g., Temurian v. Piccolo*, 2021 WL 1121003, at *4 (S.D. Fla. Mar. 24, 2021); *Democratic Republic of Congo v. Air Cap. Grp.*, 2016 WL 11739606, at *5, *report and recommendation adopted,* 2016 WL 11739605 (S.D. Fla. Sept. 29, 2016); *Chow*, 640 F. App'x at 843.  Each supports awarding fees and costs here.

This was a substantial, expedited, five-plaintiff FDUTPA case litigated from Complaint to trial in approximately eight months.  It involved a motion to dismiss, expedited and contentious

---

54(d)(2)(B) supplies the default federal deadline for fee motions, and Local Rule 7.3 requires such motions to be filed within sixty days of final judgment, "regardless of the prospect or pendency of supplemental review or appellate proceedings." S.D. Fla. L.R. 7.3(a)(1); *see also Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1335 (11th Cir. 2001) (Local Rule 7.3 is an "order of the court" under Federal Rule 54(d)(2)(B)).  The Community Hospitals therefore file now to comply with the governing federal rules, notwithstanding FDUTPA's state-law exhaustion language.  Should the Court determine the motion is premature, the Community Hospitals request that the Court hold the motion in abeyance pending the conclusion of any appeal. *See Procaps S.A.*, 157 F. Supp. 3d at 1199.

- 7 -

discovery, more than twenty depositions, expert discovery, cross-motions for summary judgment, multiple evidentiary motions, and a five-day bench trial. Although filed in a single action, the case involved five separate plaintiff Community Hospitals. The Community Hospitals were required to prove both common liability and hospital-specific injury and entitlement to relief. At trial, each Community Hospital's CEO testified and was cross-examined regarding the effect of Leapfrog's Safety Grades on his or her hospital. The scope and intensity of the litigation were substantial.

Leapfrog also materially increased the burden and cost of the case. On a compressed schedule, Leapfrog served late and overbroad discovery, and it produced nearly one million documents without performing a responsiveness review, contrary to the parties' ESI Protocol. ECF 38 § 16(a). As a result, Leapfrog produced hundreds of thousands of irrelevant "junk" documents— including more than 100,000 documents outside the relevant timeframe, more than 21,000 image files consisting primarily of logos and icons, several thousand automated or mass emails, and more than 1,000 technical issue slipsheets. This deficient, overbroad production substantially increased the Community Hospitals' litigation expenses by requiring counsel to perform the responsiveness review that Leapfrog had agreed, but failed, to undertake.

Leapfrog also failed to provide a timely or adequate privilege log. Although Leapfrog's privilege log was due on August 8 under the District's Local Rules, Leapfrog did not serve its log until September 17—over a month late. When eventually produced, the log lacked basic information necessary to evaluate the privilege claims and contained numerous errors, including improper assertions of privilege over business communications, incomplete metadata, and privilege claims over third-party communications. These deficiencies required counsel for the Community Hospitals to review the log, identify errors, and confer with Leapfrog to obtain a corrected log.

Leapfrog also forced motion practice to secure basic discovery compliance and shifted positions and public-facing statements—statements central to the Community Hospitals' FDUTPA claim—while the case was pending. Just weeks before trial, Leapfrog substantially altered language on certain of its webpages, including specific language that had been quoted and relied upon in the Community Hospitals' summary judgment briefing. Those were not minor disputes and concerns. They required the Community Hospitals to spend substantial additional time to obtain the discovery and record necessary to present the case.

Taken together, Leapfrog's discovery conduct substantially increased the time and expense required to advance this case to trial and further supports an attorneys' fees and costs award under

the scope-and-history factor.[2]  *See, e.g.*, *HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 2018 WL 1863778, at \*4 (M.D. Fla. Mar. 26, 2018) (finding that the first factor favored a fee award where nonprevailing party's conduct resulted in substantial unnecessary discovery costs); *Healthcare Res. Mgmt. Grp., LLC v. EcoNatura All Healthy World, LLC*, 2022 WL 1537757, at \*7 (S.D. Fla. May 12, 2022) (same where non-prevailing party "evince[d] a lack of diligence," including during discovery) (alteration in original); *Gov't Emps. Ins. Co. v. Right Spinal Clinic, Inc.*, 2025 WL 1644541, at \*3 (M.D. Fla. May 15, 2025) (same where non-prevailing party "failed to follow Local Rules").

   ***2. Ability to Pay.***  This factor favors an award.  The record reflects that Leapfrog is an established national organization with substantial annual revenue, including more than \$8 million in 2024 alone, PX-824.0 at 1; Leapfrog has litigation insurance providing coverage of up to \$5 million for "[e]ach [e]rroneous [a]ct" during the period from May 1, 2024 through May 1, 2026, *see* Affidavit of Sydney Scott ("Scott Aff.") Ex. F; and that following entry of the Court's decision on March 6, 2026, Leapfrog commenced a national fundraising campaign led by its CEO and in direct response to this litigation.  *See id.* Ex. E.  It is therefore "reasonable to conclude that [Leapfrog] has the financial ability to pay a fee award." *Tropical Paradise Resorts, LLC v. JBSHBM, LLC*, 2021 WL 2269822, at \*7 (S.D. Fla. Apr. 30, 2021), *report and recommendation adopted*, 2021 WL 2024424 (S.D. Fla. May 21, 2021).

   The record supports the conclusion that Leapfrog has the ability to pay a reasonable fee award.  To the extent that Leapfrog objects to the requested sum, it has only itself to blame.  The Community Hospitals waited four months to file their Complaint, engaging in a good faith attempt to resolve their differences without the need for costly litigation.  But Leapfrog declined multiple opportunities to resolve this dispute and avoid court, both before and during the litigation.  The Community Hospitals offered Leapfrog a second opportunity for resolution during mediation following the close of discovery.  ECF 106.  And, yet again, Leapfrog refused.  Nearly half of the requested fees were incurred following the unsuccessful mediation session.  Because the

---

[2] Leapfrog's gamesmanship did not end with discovery; it continued through trial.  For instance, Leapfrog delayed disclosure of Ms. Zambrana—a third party witness—until shortly before fact discovery ended, then refused to make her available for deposition until weeks before trial during the Christmas holiday.  Leapfrog similarly disclosed demonstratives for its expert, Mr. Vredenburgh, the night before his testimony, only to withdraw him the next day without prior notice, requiring the Community Hospitals to prepare and present his deposition testimony in rebuttal during trial.  This conduct unnecessarily complicated trial preparation and required substantial additional attorney time and resources.

Community Hospitals sought no damages, attorneys' fees and costs are the principal monetary consequence of the conduct this Court found unlawful.

**3. Deterrent Effect.** This factor strongly favors an award. The Court found that Leapfrog's challenged conduct was deceptive and unfair, misrepresented hospital safety to the public, and caused real harm. *See* ECF 212 at 29–37. Courts have recognized that "FDUTPA depends on the encouragement of 'private enforcement,' which is possible through the imposition of attorney's fees to prevailing parties as a deterrent to violations." *Gov't Emps. Ins. Co.*, 2025 WL 1644541, at *3. A fee award ensures that entities engaging in similar conduct cannot shift the cost of stopping their unlawful conduct onto the parties that conduct harmed. That is especially important here, where the Community Hospitals sought only equitable relief. Without a fee award, Leapfrog would bear the burden of complying with the Court's injunction, but the Community Hospitals that proved the misconduct and obtained the relief would still bear the full cost of securing it. That result would undermine FDUTPA's deterrent purpose.

**4. Merits of Respective Positions.** This factor strongly favors an award. Leapfrog lost at every stage that mattered. The Court denied Leapfrog's motion to dismiss, rejected its dispositive arguments, denied its efforts to exclude key trial evidence, and held that Leapfrog's challenged conduct violated FDUTPA. *See* ECF 41, 139, 151, 169, 176, 212.

This factor favors fees more strongly because Leapfrog repeatedly advanced meritless positions—claiming a lack of personal jurisdiction at the motion to dismiss stage while purposefully availing itself of such jurisdiction by publishing an op-ed in a South Florida newspaper; engaging in a "document dump" discovery strategy; asserting a lack of Article III jurisdiction at the summary judgment stage on the premise that the amount-in-controversy requirement was not satisfied; seeking to exclude evidence as unduly prejudicial in advance of a bench trial; and much more. *See supra* at 7–8; *infra* at 11–12.

Additionally, and as the Court found, shortly after the Complaint was filed, Leapfrog decided to "harass" the Community Hospitals, amplifying the challenged failing Safety Grades while their legality was being litigated before this Court. ECF 212 at 17, 32. At the direction of CEO Leah Binder, Leapfrog used funds from a nonprofit Google grant to purchase targeted Google advertisements designed to display the Community Hospitals' failing Safety Grades whenever users searched for the Community Hospitals online. *Id.* at 32. One Leapfrog staff member internally compared this tactic to that of a "Disney villain," revealing Leapfrog's real-time consciousness of

- 10 -

its bad faith actions. *Id*. at 17. During this litigation, Ms. Binder also published op-eds in local media outlets highlighting the Community Hospitals' failing Safety Grades and insinuating that the hospitals were unsafe and unsanitary. *See, e.g.*, PX-461.0. These pieces repeated claims even after evidence in this case, including Ms. Binder's own contemporaneous emails, demonstrated that Leapfrog lacked a factual basis for those assertions. *See* ECF 212 at 22 (citing CEO Binder's admission that Leapfrog's methodology would be a "very big deal to hospitals (and a major incentive to report to the survey)" as evidence that the methodology was unfairly punitive). Courts have found that the fourth factor favors fees under analogous circumstances. In *Warren Technology, Inc. v. UL LLC*, for example, the widespread distribution of communications to both competitors and consumers disparaging the safety of the prevailing party's products supported fees under this factor. *See* 2020 WL 9219127, at *4, *6 (S.D. Fla. Dec. 17, 2020).

**5. *Frivolity.*** This factor is inapplicable or, at minimum, neutral, because the Community Hospitals prevailed on the merits after trial. *See Bluegreen Vacations I*, 2024 WL 3738890, at *9.

**6. *Defense Raised to Frustrate or Stall.*** This factor favors an award. Leapfrog repeatedly forced the Community Hospitals to expend resources responding to weak or shifting positions, including unsupported discovery positions, meritless defenses, and last-minute changes to its public-facing statements and website content while those statements were at issue in the case. These baseless arguments and litigation tactics served to frustrate and delay the resolution of this case.

Leapfrog asserted a patently baseless personal jurisdiction argument in its motion to dismiss—an argument refuted by its own actions in publishing an op-ed in a Florida newspaper while Leapfrog's motion was pending. *See* ECF 39 (Leapfrog's motion to dismiss filed June 27, 2025); PX-461.0 (Leapfrog CEO's op-ed published June 30, 2025). It initially contested the amount-in-controversy requirement in its summary judgment motion but ignored the issue in reply and stipulated before trial that the requirement was satisfied. *See* ECF 115 at 18–19; ECF 124. Similarly, Leapfrog asserted several "affirmative defenses," each baseless. Leapfrog declined to defend its "good faith" defense when the Community Hospitals moved for summary judgment on the issue. *See* ECF 86 at 19; ECF 102. Leapfrog's "avoidable consequences" defense was entirely irrelevant to this case seeking only equitable relief. *See* ECF 86 at 18–19; ECF 102 at 17–18; ECF 107 at 10. And Leapfrog's anti-SLAPP defense was plainly foreclosed by precedent. *See* ECF 86 at 18. Leapfrog's motions in limine were also off-base, arguing for example, that evidence was unfairly prejudicial, an inapplicable objection in a bench trial. *See* ECF 98 at 14–16; ECF 118 at 3, 20.

- 11 -

Leapfrog also engaged in gamesmanship on the eve of trial by altering several of the challenged deceptive representations on its website—representations that had occupied dozens of pages of briefing then-pending before this Court—over the course of several days and *without notifying the Court or the Community Hospitals*.  Leapfrog deleted or modified its prior statements and substituted new language, forcing the Community Hospitals to identify and track the changes, seek discovery about them, and shift trial strategy based on them.  *See* ECF 136 ¶¶ 347–359.  Leapfrog even temporarily removed a website footnote it had repeatedly described as central to its defense—only to restore it after the Community Hospitals sought discovery regarding the change.  *See* ECF 39 at 9, 16; ECF 99 at 4; ECF 129 ¶¶ 63–64.  On an expedited schedule, this conduct materially increased the work required to litigate the case to judgment.

*7. **Significant Legal Question.***  This factor favors fees.  This case required the Court to address important questions concerning FDUTPA's unfairness standard and the scope of who may seek protection under the statute.  *See* ECF 212 at 16–20, 36–37.  The Court's post-trial opinion provides meaningful guidance on both issues.

Most notably, the Court resolved the question whether it should apply the modern unfairness framework under FDUTPA in light of the Eleventh Circuit's intervening decision in *FTC v. Corpay, Inc.*, 164 F.4th 807 (11th Cir. 2026).  That issue arose during the litigation and was the subject of post-summary judgment briefing, including the Community Hospitals' motion for partial reconsideration.  *See* ECF 152.  The Court's analysis confirmed that FDUTPA reaches conduct likely to cause substantial consumer injury—even in the absence of actual, completed, and quantified harm—and provided helpful guidance regarding how courts should evaluate FDUTPA (and even FTC Act) "unfairness" claims going forward.  *See* ECF 212 at 19.

The case also required the Court to address the scope of who may qualify as a "consumer" under FDUTPA.  In resolving Leapfrog's arguments, the Court confirmed that entities such as hospitals—and other market participants affected by deceptive practices—may fall within the statute's protection, and that FDUTPA is not limited to the most direct and obvious form of consumer plaintiffs.  *See* ECF 212 at 17–18, 32 n.12.

Accordingly, this case required the Court to address and resolve important issues concerning both the substantive standards governing FDUTPA claims and the scope of parties entitled to relief.  This factor weighs in favor of a fee award.  *See Bluegreen Vacations II*, 2024 WL 4297089, at *5 (addressing "uncertainty" regarding FDUTPA's scope "qualifies as advancing [the] law").

- 12 -

\* \* \*

In sum, the relevant FDUTPA factors weigh decisively in favor of awarding attorneys' fees and costs here.  The Community Hospitals prevailed completely.  The litigation was substantial and intensified by Leapfrog's own conduct.  Leapfrog can satisfy an award.  And awarding fees is necessary to vindicate FDUTPA's deterrent and remedial purposes.  *See Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*, 2021 WL 1200422, at \*10 (S.D. Fla. Mar. 5, 2021) (prevailing party "entitled to its attorneys' fees under FDUTPA" when "the equitable [FDUTPA] factors weigh in favor of" the prevailing party); *Healthcare Res. Mgmt. Grp.*, 2022 WL 1537757, at \*10 (awarding fees where four of seven factors favored the prevailing party and remaining three were neutral).

## II.     The Attorneys' Fees Sought By The Community Hospitals Are Reasonable

Once a party establishes entitlement to attorneys' fees, the remaining question is whether the amount requested is reasonable.  *See Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 853 (11th Cir. 1990).  It is.  The Community Hospitals seek an attorneys' fees award of $9,903,527.50.  That amount is supported by contemporaneous billing records, reflects substantial billing judgment, and corresponds to the work reasonably required to litigate and obtain excellent results in an expedited, five-plaintiff FDUTPA case through trial and final judgment.  *See* Scott Aff. Exs. A, B (attaching invoices).  It is not a multiplier, a premium, or a sanction.  It is the reasonable cost of obtaining complete relief in this action.  While the Community Hospitals seek a collective lodestar award, that total reflects approximately $2 million in reasonable fees and costs attributable to each prevailing Hospital.

Courts determine a reasonable fee by applying the lodestar method—reasonable hours multiplied by a reasonable hourly rate.  *See Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *Herbst v. Am. Orthodontics Corp.*, 2025 WL 3755394, at \*3 (S.D. Fla. Jan. 23, 2025) (Middlebrooks, J.).  In doing so, courts need not achieve "auditing perfection"; they are permitted to "do rough justice."  *Fox v. Vice*, 563 U.S. 826, 838 (2011).  Applying the lodestar method here, no reduction is warranted.

### A.  The Hourly Billing Rates Are Reasonable

In awarding fees, a court must determine whether the requested hourly rate is reasonable. *See Glob. Digital Sols., Inc. v. Grupo Rontan Electro Metalurgica, S.A.*, 2021 WL 7630524, at \*2 (S.D. Fla. Aug. 16, 2021).  "A reasonable hourly rate is the prevailing market rate in the relevant

- 13 -

legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299.[3]  The rates sought fall comfortably within that range.

The Community Hospitals seek rates of up to $975 for partners, $800 for counsel, and $675 for associates.  Those rates are significantly discounted from the rates actually billed in this matter, and they are in line with rates approved by this Court and others within the Southern District of Florida in comparable complex litigation.  *See, e.g.*, *Sprint Commc'ns, LLC v. Calabrese*, 2025 WL 713048, at *7 (S.D. Fla. Feb. 20, 2025), *report and recommendation adopted*, 2025 WL 708130 (S.D. Fla. Mar. 5, 2025) ($1,077 for partners, $697 for associates); *Epic Sys. Corp. v. Decapolis Sys., LLC*, 2024 WL 5236912, at *1 (S.D. Fla. Nov. 25, 2024) ($860 for partners, $415 for associates);[4] *Trump v. Clinton*, 653 F. Supp. 3d 1198, 1229–37 (S.D. Fla. 2023); *Infogroup Inc. v. Off. Depot Inc.*, 2024 WL 4110526, at *3 (S.D. Fla. Aug. 21, 2024), *report and recommendation adopted*, 2024 WL 4104029 (S.D. Fla. Sept. 6, 2024) ($1,050 for partners, $800 for associates); *U.S. Sugar Corp. v. Com. & Indus. Ins. Co.*, 2023 WL 4953191, at *5, *7 (S.D. Fla. Aug. 3, 2023) ($932 and $1,058 for partners).

The timekeepers whose fees are sought have substantial experience in complex federal litigation, discovery, motion practice, expert work, and trial.  But the point is simpler than that: these are market rates for this kind of work in this District.  No partner seeks more than $975 per hour.  No associate seeks more than $675.  Those rates are reasonable, particularly in a case that proceeded on an expedited schedule and required counsel to address complex issues concerning

---

[3]  "[T]he going rate in the community [is] the most critical factor in setting the fee rate." *Maxitransfers LLC v. La Casita Envios Corp.*, 2025 WL 3091153, at *6 (S.D. Fla. July 29, 2025).  Courts may also consider "the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation and ability, the time constraints involved, preclusion of other employment, contingency, the undesirability of the case, the attorney's relationship to the client, and awards in similar cases." *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996) (setting forth factors from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).  This broader inquiry favors fees as well.  The fees requested are substantially discounted from counsel's ordinary billable rates, as the submitted invoices reflect.  Counsel is exceptionally qualified.  *See* Scott Aff. § III.  This was a complicated case, benefitting from experienced counsel specializing in complex commercial disputes.  The litigation was expedited, proceeding from Complaint to trial in approximately eight months.  Attorneys often worked full time on the matter, particularly during the lead up to trial, to the exclusion of other work.  The litigation resulted in a complete victory for the Community Hospitals, culminating in an injunction against Leapfrog's unlawful practices.  *See* ECF 212.  And courts in this District have awarded fees far exceeding those requested here, including under FDUTPA.  *See, e.g.*, *Procaps S.A. v. Patheon*, 2017 WL 3536917, at *2 (S.D. Fla. Aug. 17, 2017) (awarding $18,494,846 in fees and costs in a FDUTPA action).

[4]  The underlying hourly fees were not included in the Court's opinion but can be found on the case docket. *See* Supp. Mot. for Att'y Fees, *Epic Sys. Corp.*, 22-cv-80173 (S.D. Fla. Aug. 9, 2024), Dkt. No. 114 at 5.

- 14 -

Leapfrog's methodology, expert evidence, and equitable relief. The requested rates, hours, and total fees for Gibson Dunn attorneys appear below:

| Timekeeper | Title | Hourly Rate | Hours Claimed | Total Fees |
|---|---|---|---|---|
| Mary Beth Maloney | Partner | $975.00 | 473.8 | $ 461,955.00 |
| Daniel P. Chung | Partner | $975.00 | 623.0 | $ 607,425.00 |
| Lee R. Crain | Partner | $975.00 | 847.3 | $ 826,117.50 |
| Scott K. Hvidt | Partner | $975.00 | 878.0 | $ 856,050.00 |
| Sydney Scott | Partner | $975.00 | 470.6 | $ 458,835.00 |
| Helgi C. Walker | Partner | $975.00 | 128.7 | $ 125,482.50 |
| Christine M. Buzzard | Of Counsel | $800.00 | 888.1 | $ 710,480.00 |
| Robert Batista | Associate | $675.00 | 498.8 | $ 336,690.00 |
| Emily Cardone | Associate | $675.00 | 670.2 | $ 452,385.00 |
| Alexander M. Fischer | Associate | $675.00 | 494.1 | $ 333,517.50 |
| Adam Garnick | Associate | $675.00 | 834.0 | $ 562,950.00 |
| Andrew Kuntz | Associate | $675.00 | 563.3 | $ 380,227.50 |
| Mary Otoo | Associate | $675.00 | 709.4 | $ 478,845.00 |
| Kevin Reilly | Associate | $675.00 | 663.5 | $ 447,862.50 |
| Kevin Simmons | Associate | $675.00 | 731.5 | $ 493,762.50 |
| Marc Aaron Takagaki | Associate | $675.00 | 572.8 | $ 386,640.00 |
| Iason Togias | Associate | $675.00 | 567.8 | $ 383,265.00 |
| Karsyn Archambeau | Associate | $500.00 | 714.6 | $ 357,300.00 |
| Noah Delwiche | Associate | $500.00 | 739.2 | $ 369,600.00 |
| Laura Wang | Associate | $500.00 | 354.8 | $ 177,400.00 |
| **TOTAL** | | | | **$ 9,206,790.00** |

The Gibson Dunn litigation team included highly experienced partners.  Ms. Maloney served as lead trial counsel and was responsible for the case from its inception, including managing overall litigation strategy, staffing, and supervision.  A *Chambers USA* ranked litigator, her practice includes extensive first-chair representation of clients in commercial litigation and government investigations, as well as representing companies, boards, and executives in multi-million-dollar disputes and high-stakes federal litigation.  Mr. Chung also played a central role in discovery and

- 15 -

at trial, coordinating factual development and deposing and cross-examining key Leapfrog witnesses, including its CEO Leah Binder.  He previously served as an Assistant U.S. Attorney in the Southern District of New York and is a nationally recognized trial lawyer recognized as a Global Elite Thought Leader by *Who's Who Legal*; his practice focuses on complex commercial litigation and defense against civil and criminal regulatory enforcement.  Mr. Crain led the Community Hospitals' defensive discovery and document production, deposed and defended depositions of numerous fact, expert, and third-party witnesses, and handled several witnesses at trial.  His practice focuses on high-stakes trial and appellate litigation in federal and state courts, with a specialty in First Amendment matters; in 2025, he was recognized as a finalist for Young Litigator of the Year by *American Lawyer.*  Mr. Hvidt led offensive discovery, oversaw key aspects of expert discovery, and deposed and cross-examined several key Leapfrog witnesses.  He maintains a broad-based trial practice, including litigation in state and federal courts and is recognized by *Best Lawyers: Ones to Watch in America.*  Ms. Scott was heavily involved in discovery and trial preparation, especially in developing the factual record, preparing the Community Hospitals' witnesses for their depositions and trial, and conducting their direct examinations at trial.  She has been recognized by *Benchmark Litigation* in its "40 & Under List – South" and has extensive experience representing plaintiffs and defendants at every stage of litigation.  And Ms. Walker led briefing, playing a substantial role in developing legal strategy leading up to and during trial.  Ms. Walker is a *Chambers USA* ranked lawyer specializing in appellate law and complex litigation matters; she has been elected as a Fellow of the American Academy of Appellate Lawyers.

Gibson Dunn's of counsel and associate team was also highly skilled.  Ms. Buzzard and Mr. Batista led teams in drafting the Community Hospitals' briefing, with Ms. Buzzard arguing a key dispositive motion at trial.  Mr. Takagaki oversaw fact discovery for the Community Hospitals—including managing document review, discovery responses, and factual development across the five hospitals—and took the deposition and trial testimony of Leapfrog expert Mark Rule.  Ms. Cardone supported the discovery effort, with a particular focus on offensive discovery efforts.  She also took the deposition and trial testimony of Leapfrog witness Isis Zambrana.  And Mr. Simmons led the preparation and organization of documentary evidence and presented St. Mary's CEO Cynthia McCauley at trial.  Mr. Kuntz and Mr. Reilly assisted in discovery efforts while also playing a central role in preparing the Community Hospitals' expert witnesses for trial testimony.  Mr. Reilly also handled oral argument regarding key deposition designations at trial.  Mr. Garnick

similarly contributed to document and expert discovery and played a key role in trial preparation, which included developing the opening statement and closing argument. Mr. Fischer, Ms. Otoo, Mr. Togias, Ms. Archambeau, Mr. Delwiche, and Ms. Wang assisted with discovery, supported deposition preparation for key fact and expert witnesses, and contributed to trial preparation.

The firms of Marcus Rashbaum Pineiro & Meyers LLP and Neiman Mays Floch & Almeida PLLC served as local counsel. Mr. Marcus was the primary local counsel on this matter and served as a full member of the trial team. He examined multiple witnesses at trial and participated in core trial preparation and strategy. He is an experienced trial lawyer with substantial experience in complex civil and white-collar litigation, and he has been ranked by *Chambers USA* in the top band for litigation and white-collar defense in Florida. Ms. Meyers, Mr. Pineiro, Mr. Rashbaum, and Mr. Floch are all experienced attorneys in the Florida market. They devoted substantial time to advising on strategy and Florida practice as well as reviewing briefs and other court submissions, essential tasks typically provided by local counsel.

The requested rates, hours, and total fees for local counsel attorneys appear below:

| Timekeeper | Title | Hourly Rate | Hours Claimed | Total Fees |
|---|---|---|---|---|
| Jeffrey Marcus | Partner | $975 | 498.0 | $ 485,550.00 |
| Kathryn Meyers | Partner | $975 | 4.6 | $ 4,485.00 |
| Michael Pineiro | Partner | $975 | 78.8 | $ 76,830.00 |
| Daniel Rashbaum | Partner | $975 | 36.1 | $ 35,197.50 |
| Brandon Floch | Partner | $875 | 108.2 | $ 94,675.00 |
| **TOTAL** | | | | **$ 696,737.50** |

Additional information regarding the experience and qualifications of each timekeeper for whom fees are sought in this matter appears in their firm biographies. *See* Scott Aff. Exs. C, D.

## B.    The Total Hours Expended Are Reasonable

The Court must also evaluate the reasonableness of the total hours expended by the Community Hospitals' counsel. *See Bluegreen Vacations I*, 2024 WL 3738890, at *11. The fee applicant must provide "specific and detailed evidence so that the court can determine the necessity and reasonableness of the time claimed for the task." *Akai Custom Guns, LLC v. KKM Precision, Inc.*, 2025 WL 2663071, at *11 (S.D. Fla. Aug. 29, 2025). The party requesting fees must also exercise "billing judgment," meaning it must exclude from its application "excessive, redundant[,] or

otherwise unnecessary hours." *Norman*, 836 F.2d at 1301 (defining such hours as those "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation[,] or experience of counsel"). The fee applicant bears the initial burden of submitting evidence sufficient to allow the court to confirm that the requested fees are not excessive, and "'objections and proof from fee opponents' concerning hours that should be excluded must be specific and 'reasonably precise.'" *ACLU v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (quoting *Norman*, 836 F.2d at 1301).

The submitted hours expended by counsel for the Community Hospitals are reasonable and reflect the tremendous effort required to achieve victory. *See Flexiteek Ams., Inc. v. Plasteak, Inc.*, 2016 WL 7497485, at *28 (S.D. Fla. Feb. 4, 2016) (finding hours expended reasonable "based upon the complex and contentious nature of this litigation"); *see also City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) ("[A party] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the [opposing party] in response.").[5] This was not a routine, single-plaintiff matter. It was an expedited case involving five prevailing hospital plaintiffs, extensive fact and expert discovery, cross-motions for summary judgment, substantial pretrial motion practice, and a five-day bench trial. Each of the five Community Hospitals has its own leadership, operations, patient population, and distinct evidence of harm arising from Leapfrog's Safety Grades. The trial record confirms that the Community Hospitals could not prevail through common proof alone; each plaintiff Hospital was required to prove hospital-specific injury through live witness testimony and cross examination, including of its CEO. Counsel had to develop and present both common proof concerning Leapfrog's methodology and five separate factual records.

As required, the Community Hospitals have submitted detailed billing records that contemporaneously record the time spent on the case and describe the subject matter of each task performed to support their reasonable request. Scott Aff. Exs. A, B. These records provide the Court with a sufficient basis to evaluate the necessity and reasonableness of the hours expended. *See Bluegreen Vacations I*, 2024 WL 3738890, at *13. As these records reflect, counsel exercised

---

[5] That the Community Hospitals did not succeed on every motion does not change the outcome. Indeed, courts in this Circuit routinely reject arguments that fee awards should be reduced because a prevailing party pursued unsuccessful motions or did not prevail on every contention advanced during the litigation. *See, e.g.*, *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 346 F. App'x 403, 404 (11th Cir. 2009) ("a prevailing party entitled to attorneys' fees is not to be penalized for failed motions"); *Columbus Mills, Inc. v. Freeland*, 918 F.2d 1575, 1580–81 (11th Cir. 1990) (affirming refusal to reduce fees for "completely unsuccessful" motions where the prevailing party succeeded on virtually every issue before the court).

appropriate billing judgment.  All hours sought in this motion have been selected following review to reflect time reasonably necessary to litigate this case and were actually billed to the relevant client.[6]  Counsel does not seek reimbursement for excessive, redundant, or unnecessary time and, where appropriate, excluded time to ensure that the requested fees reflect only indisputably reasonable work the opposing party should reimburse.  *See Norman*, 836 F.2d at 1301.  In fact, the Community Hospitals do not seek reimbursement for every lawyer who billed time to the matter, and certain timekeepers and time entries are excluded from the request.

Counsel also staffed the case efficiently.  Associates performed the bulk of the document review, research, drafting, and trial-preparation work, while partners provided strategic oversight and handled tasks requiring partner-level judgment.  *See Domond v. PeopleNetwork APS*, 750 F. App'x 844, 849 (11th Cir. 2018) (affirming a fee award without reduction where the district court "concluded that the attorneys efficiently billed work and distributed it to attorneys charging lower rates").  Where partner time became too granular or duplicative given the pace of the case, that time was excluded.  This allocation further confirms that the hours sought are reasonable rather than excessive.

In short, the requested hours reflect the reality of the case litigated here: five plaintiffs, expedited proceedings, substantial discovery, expert work, and trial, all intensified by Leapfrog's own litigation conduct.  No across-the-board reduction is warranted.

**III.    The Costs Sought By The Community Hospitals Are Reasonable**

"FDUTPA permits the recovery of litigation expenses that are reasonable and related to the litigation."  *Unisource Discovery, Inc. v. Unisource Discovery, LLC*, 2023 WL 4187094, at \*3 (S.D. Fla. June 9, 2023) (internal quotations omitted), *report and recommendation adopted*, 2023 WL 4188118 (S.D. Fla. June 26, 2023); *Chow*, 640 F. App'x at 836 n.4 ("FDUTPA allows for the award of non-taxable costs, *i.e.* those costs that are not taxable under federal law at 28 U.S.C. § 1920.").  While the moving party "must provide supporting documentation to justify a cost award of any kind," *Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic*, 2020 WL 6808856, at \*9 (S.D. Fla. Apr. 16, 2020) (internal quotation marks omitted), the opposing party "bears the

---

[6] The terms of Gibson Dunn's fee agreement state that it will bill the Community Hospitals for legal services and reimbursable expenses on a monthly basis at hourly rates.  Gibson Dunn also provides a volume discount in some instances; that discount is not implicated here, as the requested rates fall well below the firm's discounted, effective rates.  Marcus, Neiman, Rashbaum, & Pineiro as well as Marcus, Rashbaum, Pineiro & Meyers also bill monthly for legal service at hourly rates.

burden to establish that a cost item is not recoverable," *Bluegreen Vacations I*, 2024 WL 3738890, at *18 (internal quotation marks omitted).  The costs sought satisfy the relevant standard.

The Community Hospitals seek only a narrow set of case-specific litigation costs, each supported by invoices and vendor records submitted with this motion.  Specifically, the Community Hospitals seek recovery only for: (1) transcript and court-reporting fees for depositions, hearings, and trial; and (2) research expenses.  *See* Scott Aff. Ex. A (invoices reflecting these expenses).  The Community Hospitals do not seek expert expenses.  They do not seek trial-support or demonstrative expenses.  And they do not seek travel and lodging-related expenses.

Transcript and court-reporting costs of $137,423.52 were necessarily incurred in this case involving more than twenty depositions, expert proceedings, hearings, and a five-day bench trial.  These costs are reasonable and such expenses are routinely awarded in federal cases.  *See, e.g.*, *Morrison v. Reichhold Chemicals, Inc*. 97 F.3d 460, 464–65 (11th Cir. 1996).

The Community Hospitals' research costs of $458,929.45 are also reasonable and reflect expenses incurred in this action, which involved extensive briefing and accompanying legal analysis.  These costs were paid by Gibson Dunn to third-party providers—largely Westlaw and PACER—and such fees are customarily charged by the firm to its clients.  *See Unisource Discovery*, 2023 WL 4187094, at *3 (noting in a FDUTPA case that "courts have found that costs for computerized legal research are recoverable" and awarding research fees); *Env't Mfg. Sol., LLC. v. Peach State Labs, Inc.*, 274 F. Supp. 3d 1298, 1329 (M.D. Fla. 2017) (discussing online legal research fees); *Sprint Commc'ns, LLC*, 2025 WL 713048, at *12 (awarding recovery of Westlaw charges).[7]

The Community Hospitals seek only a narrow set of documented, case-specific expenses that were reasonably incurred to litigate this through trial.  Because those expenses are reasonable and related to the litigation, the Court should award them in the amount of $596,352.97.

## CONCLUSION

The Court should award the Community Hospitals' attorneys' fees and costs in the amount of $10,499,880.47.

---

[7] To the extent not recoverable as expenses, the research fees are recoverable as attorneys' fees.  *See Trump v. Clinton*, 653 F. Supp. 3d 1198, 1228 (S.D. Fla. 2023) (noting that "costs incurred for electronic legal research are considered a component of attorneys' fees" and considering them as such).

Dated:  May 15, 2026                                Respectfully submitted,

By: */s/ Jeffrey Marcus*                            By: */s/ Mary Beth Maloney*
_____                           _____

Jeffrey Marcus, Bar # 310890                        Mary Beth Maloney (*pro hac vice*)
Michael Pineiro, Bar # 41897                        Lee R. Crain (*pro hac vice*)
Daniel Rashbaum, Bar # 75084                        GIBSON, DUNN & CRUTCHER LLP
MARCUS RASHBAUM PINEIRO & MEYERS LLP                 200 Park Avenue
2 South Biscayne Boulevard                          New York, NY  10166
Suite 2530                                          (212) 351-4000
Miami, FL  33131                                    mmaloney@gibsondunn.com
(305) 400-4268                                      lcrain@gibsondunn.com
jmarcus@mrpfirm.com
mpineiro@mrpfirm.com
drashbaum@mrpfirm.com                               Daniel P. Chung (*pro hac vice*)
                                                    Helgi C. Walker (*pro hac vice*)
Jeffrey Neiman, Bar # 544469                        Christine M. Buzzard (*pro hac vice*)
Brandon S. Floch, Bar # 125218                      GIBSON, DUNN & CRUTCHER LLP
NEIMAN MAYS FLOCH & ALMEIDA PLLC                     1700 M Street, N.W.
100 SE 3rd Ave.                                     Washington, D.C.  20036
Suite 805                                           (202) 955-8500
Fort Lauderdale, FL  33394                          dchung@gibsondunn.com
(954) 462-1200                                      hwalker@gibsondunn.com
jneiman@nmfalawfirm.com                             cbuzzard@gibsondunn.com
bfloch@nmfalawfirm.com
                                                    Sydney Scott (*pro hac vice*)
                                                    GIBSON, DUNN & CRUTCHER LLP
                                                    811 Main Street #3000
                                                    Houston, TX 77002
                                                    (346) 718-6600
                                                    sascott@gibsondunn.com

                                                    Scott K. Hvidt (*pro hac vice*)
                                                    GIBSON, DUNN & CRUTCHER LLP
                                                    2001 Ross Avenue, Suite 2100
                                                    Dallas, TX  75201
                                                    (214) 698-3100
                                                    shvidt@gibsondunn.com

*Attorneys for the Community Hospitals*

- 21 -

- 22 -

**LOCAL RULE 7.3 CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 7.3, I hereby certify that the Community Hospitals, by and through their undersigned counsel, provided a draft of this motion and supporting materials to Leapfrog on May 5, 2026.  As contemplated and required by Rule 7.3(b), the Community Hospitals' counsel was prepared to confer in good faith with Leapfrog's counsel in an attempt to narrow any fee disputes by agreement before filing this Motion.  On May 7, 2026, and May 11, 2026, undersigned counsel requested that Leapfrog's counsel provide their availability to confer in good faith on the Community Hospitals' Motion.  On May 11, 2026, Leapfrog's counsel confirmed that Leapfrog refused to confer in good faith to resolve any disputes by agreement. The parties, therefore, were unable to reach any agreement regarding the Community Hospitals' request for attorneys' fees and expenses.

Date: May 15, 2026

By: */s/ Sydney Scott*
Sydney Scott (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
811 Main Street #3000
Houston, TX 77002
(346) 718-6600
sascott@gibsondunn.com

- 23 -

**VERIFICATION PURSUANT TO LOCAL RULE 7.3**

Under penalty of perjury, I declare that I have reviewed the Community Hospitals' Verified Motion for Attorneys' Fees and that the facts alleged therein are true and correct to the best of my knowledge and belief.

Date: May 15, 2026

By: */s/ Sydney Scott*

Sydney Scott (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
811 Main Street #3000
Houston, TX 77002
(346) 718-6600
sascott@gibsondunn.com

- 24 -

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2026, I served a copy of the foregoing motion and accompanying materials on all counsel of record via the ECF filing system. .

Date: May 15, 2026

By: */s/ Sydney Scott*
Sydney Scott (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
811 Main Street #3000
Houston, TX 77002
(346) 718-6600
sascott@gibsondunn.com