IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 9:25-CV-80526-DMM

GOOD SAMARITAN MEDICAL
CENTER, INC., et al.,

          *Plaintiffs*,

    v.

THE LEAPFROG GROUP,

          *Defendant*.

**AFFIDAVIT OF SYDNEY SCOTT IN SUPPORT OF**
**THE COMMUNITY HOSPITALS' VERIFIED MOTION FOR ATTORNEYS' FEES**
**AND COSTS**

I, Sydney Scott, declare and state as follows:

1.     I respectfully submit this Affidavit in support of the Community Hospitals' Verified Motion for Attorneys' Fees and Costs (the "Motion"). I am an attorney admitted to practice law in the State of Texas, and I have been granted permission by the Court to appear *pro hac vice* in this case. ECF 49. I am over the age of eighteen and make this affidavit from personal knowledge based on the information and documents referenced in this affidavit and from knowledge conveyed to me by colleagues.

2.     I am a partner in the law firm Gibson, Dunn & Crutcher LLP, an international, multi-service law firm with approximately 2,200 lawyers across nearly two dozen offices worldwide, including in New York, Dallas, Houston, and Washington, D.C.

3.     I served as trial counsel in this action and, along with my partner colleagues, oversaw all aspects of the case—including strategy, staffing, and supervision.

4.     Plaintiffs Delray Medical Center, Good Samaritan Medical Center, Palm Beach Gardens Medical Center, St. Mary's Medical Center, and West Boca Medical Center (the "Community Hospitals") seek attorneys' fees of $9,903,527.50 plus other fees and costs of $596,352.97, for a total requested sum of $10,499,880.47. This requested sum reflects the

1

substantial work required to litigate this complex and expedited matter, which proceeded from initial filing through a five-day bench trial in approximately eight months and involved extensive motion practice, expansive discovery across five separate hospitals, more than twenty depositions over approximately six weeks, significant expert work, and extensive trial preparation.

5.      Nothing in this affidavit, its exhibits or attachments, is intended to be a waiver of the attorney-client privilege or the work product doctrine.

**I.      Gibson Dunn Invoices**

6.      For this litigation, the Community Hospitals compensated Gibson Dunn based on the number of hours expended on this matter by each timekeeper at his or her hourly rate, plus out-of-pocket expenses incurred in connection with the litigation.  Gibson Dunn invoiced the Community Hospitals monthly, and those invoices reflect the time spent by each attorney or staff member, recorded in tenths of an hour, along with descriptions of the work performed.  These invoices also include certain expenses incurred by the Community Hospitals.

7.      In recording their time, Gibson Dunn attorneys are required to specify the client and matter number, the nature of the work performed, and the amount of time expended on that task.  Gibson Dunn's billing records contain all this information.  These billing records also contain the standard hourly billing rates for each attorney who has worked on this matter.  Attached as **Exhibit A** are true and correct copies of these invoices from the inception of the case through January 2026.

8.      In preparing this fee application, the Community Hospitals, exercising billing judgment, have excluded a number of billing entries to avoid any further disputes and to bring a close to this litigation.  The Community Hospitals do not seek reimbursement for those entries.  In addition, redactions have been made to the invoices with respect to time entries for timekeepers not claimed in this Motion.  The Community Hospitals will submit unredacted versions of any such entries to the Court for *in camera* review upon request.

9.      The Community Hospitals incurred transcript and court reporting expenses in connection with depositions, hearings, and trial for this litigation.  These expenses are routinely billed to clients and were reasonably necessary to prosecute this case.  Transcript and court reporting expenses are reflected in Gibson Dunn's invoices.

10.     The Community Hospitals incurred research expenses related to this litigation.  The Westlaw and Lexis rates are based on heavily discounted fees Gibson Dunn has negotiated with those services.  Research expenses are reflected in Gibson Dunn's invoices.

## II.     Local Counsel Invoices

11.     The Community Hospitals also paid local counsel at the firms of Marcus Rashbaum Pineiro & Meyers LLP and Neiman Mays Floch & Almeida PLLC (formerly of Marcus, Neiman, Rashbaum & Pineiro LLP) based on the number of hours expended on this matter by each timekeeper at his or her hourly rates, plus out-of-pocket expenses incurred in connection with the litigation.  The monthly invoices contain descriptions of each attorney's activities for each day invoiced and the time spent by each attorney or staff member, recorded in tenths of an hour, and the standard hourly billing rate for each attorney that worked on this matter.

12.     Attached as **Exhibit B** are true and correct copies of local counsel invoices from the inception of the case through January 2026.  As with Gibson Dunn's invoices, the Community Hospitals have redacted entries for timekeepers not claimed in this Motion.  The Community Hospitals will submit unredacted versions of any such entries to the Court for *in camera* review upon request.

## III.     Timekeeper Qualifications and Roles

13.     Gibson Dunn staffed this case with a team of highly experienced attorneys whose practices focus on complex commercial litigation and high-stakes trial work, including attorneys with substantial experience in multi-party federal litigation, factual development, expert analysis, sophisticated briefing, and trial presentation.

14.     Due to the complexity of the issues, the expedited schedule, and the presence of five separate Community Hospitals, it was necessary to staff this case with a coordinated team of attorneys across multiple offices to ensure that the case could be prosecuted thoroughly and efficiently.  As described above, this matter effectively required counsel to develop and present multiple distinct factual narratives—for five separate hospitals—within a single proceeding, while simultaneously managing extensive discovery, motion practice, and trial preparation on a compressed timeline.  Each Community Hospital had its own leadership, operations, documents, patient population, and evidence of harm, and counsel was required to build and maintain five parallel factual records throughout the litigation—from initial investigation and discovery through

trial presentation—while also litigating the common issues concerning Leapfrog's methodology and defenses.

15. Nevertheless, at every phase of the litigation, the Community Hospitals made every effort to staff the case efficiently and to delegate work to attorneys with lower billing rates whenever appropriate. More labor-intensive tasks—such as legal research, initial document review, and preparation of draft materials—were primarily performed by associates and other legal professionals; while partners focused on overall strategy, supervision, and trial presentation. This allocation of work reduced costs while maintaining the quality and effectiveness of the representation.

16. In addition, the Community Hospitals exercised further billing judgment by eliminating time entries for several attorneys and other legal professionals who worked on the case in more limited capacities, including certain more senior timekeepers who are excluded entirely from the request. The requested rates are thus conservative in light of the work actually performed.

17. In sum, the Community Hospitals staffed this matter with a coordinated team of experienced partners, associates, and other legal professionals, each of whom contributed to the litigation based on their experience and role. This structure ensured that the case was prosecuted efficiently, without unnecessary duplication, while maintaining the level of expertise required to handle a complex, expedited, and high-stakes matter. The qualifications and roles of the attorneys who performed work on this case are described below.

### A. Gibson Dunn Partners

18. The Community Hospitals staffed this case with six Gibson Dunn commercial litigation partners, including myself.

19. A number of additional Gibson Dunn partners, highly experienced in commercial litigation, billed to the matter from time to time, serving in an advisory capacity. To avoid any dispute in this regard and to ensure swift resolution of this motion, the Community Hospitals have eliminated their time from this fee request.

20. The six core Gibson Dunn partners were involved in all aspects of litigation requiring partner-level judgment, including making strategic decisions, preparing and defending witnesses and experts at depositions, taking depositions of key Leapfrog personnel and experts, drafting dispositive motions and other significant briefs, participating in court hearings, pretrial

preparations, and trial, and interacting with Leapfrog's counsel.  Where partner time became too granular or duplicative in light of the pace of the case, that time was excluded.

### 1. Mary Beth Maloney

21.     Mary Beth Maloney served as lead trial counsel in this matter and was responsible for the case from its inception, including managing overall litigation strategy, staffing, and supervision.

22.     Ms. Maloney is a partner in Gibson Dunn's New York office, where she focuses her practice on complex commercial litigation, including high-stakes contract disputes, shareholder disputes, securities litigation, and life sciences matters.  Her practice includes extensive first-chair representation of clients in commercial litigation and government investigations, as well as representing companies, boards, and executives in multi-million-dollar disputes and high-stakes federal litigation.  She is ranked by *Chambers USA* in its New York Securities Litigation, listed as a "Recommended Lawyer" in *The Legal 500 US* for Securities Litigation: Defense, and recognized by *The Best Lawyers in America* for Commercial Litigation.

23.     Before joining Gibson Dunn in 2008, Ms. Maloney served as a law clerk to the Honorable Alicemarie H. Stotler, then Chief Judge of the United States District Court for the Central District of California.  Ms. Maloney graduated from the University of Southern California Gould School of Law in 2007.  Attached as **Exhibit C** is a true and correct copy of her official firm biography, which contains a list of representative matters.

### 2. Daniel P. Chung

24.     Daniel P. Chung is a partner in Gibson Dunn's Washington, D.C. office.  In this matter, Mr. Chung played a central role in discovery and at trial, including coordinating factual development and deposing and cross-examining key Leapfrog witnesses, including its CEO Leah Binder.

25.     Mr. Chung is a nationally recognized trial lawyer whose practice focuses on complex commercial litigation and defense against civil and criminal regulatory enforcement.  He regularly advises and defends corporate executives, boards, and audit committees, and conducts sensitive internal investigations.  His experience spans a broad range of industries, including healthcare, technology, media, and financial institutions.  Mr. Chung has been recognized as a Global Elite Thought Leader by *Who's Who Legal*, a "Future Litigation Star" by *Benchmark Litigation*, and a "Rising Star" by the *National Law Journal*.

26.     Prior to joining Gibson Dunn, Mr. Chung served for more than four years as an Assistant United States Attorney in the Southern District of New York, where he prosecuted a wide range of complex federal criminal cases and tried eight federal criminal jury trials to verdict. He also briefed and argued numerous appeals before the United States Court of Appeals for the Second Circuit.

27.     Mr. Chung previously served as a law clerk to the Honorable Norman H. Stahl of the United States Court of Appeals for the First Circuit and the Honorable Michael B. Mukasey of the United States District Court for the Southern District of New York.  Mr. Chung is a 2003 *cum laude* graduate of Harvard Law School.  Attached as **Exhibit C** is a true and correct copy of Mr. Chung's official firm biography, which contains a list of representative matters.

### 3.  Lee R. Crain

28.     Lee R. Crain is a partner in Gibson Dunn's New York office and has been with the firm since 2016.  In this matter, Mr. Crain led the Community Hospitals' defensive discovery and document production, deposed and defended depositions of numerous fact, expert, and third-party witnesses, and handled several witnesses at trial.  Mr. Crain played a central role in developing and presenting the testimony of the Community Hospitals' expert Dr. Berger, whose opinions on consumer perception and decision-making were a significant component of the evidentiary record at trial.  He further participated in briefing and legal research throughout the case—spanning from Complaint to trial briefing.

29.     Mr. Crain focuses on high-stakes trial and appellate litigation in federal and state courts.  He represents clients across a range of industries, including healthcare, technology, media and entertainment, energy, and financial services, in complex commercial disputes, First Amendment matters, employment litigation, and cross-border proceedings.  In 2025, he was recognized as a finalist for Young Litigator of the Year by *American Lawyer*.  He has also been recognized by *Benchmark Litigation* as a "Future Star" and included in its "40 & Under" list, and by *Lawdragon* as a "Global Leader in Crisis Management" and was named among the "500 Leading Global Entertainment, Sports & Media Lawyers," reflecting his experience handling complex and high-profile disputes.

30.     Prior to joining Gibson Dunn, Mr. Crain served as a law clerk to the Honorable Paul J. Watford of the United States Court of Appeals for the Ninth Circuit and the Honorable Sidney H. Stein of the United States District Court for the Southern District of New York.   Mr.

Crain graduated first in his class and *summa cum laude* from the University of Michigan Law School in 2014.  Attached as **Exhibit C** is a true and correct copy of Mr. Crain's official firm biography, which contains a list of representative matters.

### 4.  Scott K. Hvidt

31.     Scott K. Hvidt is a partner in Gibson Dunn's Dallas office and has been with the firm since 2016.  In this matter, Mr. Hvidt led offensive discovery, oversaw key aspects of expert discovery, and deposed and cross-examined several key Leapfrog witnesses.  Mr. Hvidt also worked closely with the Community Hospitals' expert Dr. Nicholson to develop and refine his opinions and played a leading role in preparing and presenting that testimony at trial, which addressed issues at the heart of the case.

32.     Mr. Hvidt maintains a broad-based trial practice, including litigation in state and federal courts, and has experience representing clients in a wide range of complex business disputes, including class actions, antitrust claims, securities litigation, contract disputes, and merger-related litigation.  He has been recognized by *Best Lawyers: Ones to Watch in America* and by *D Magazine* as a Best Lawyer Under 40.

33.     Prior to joining Gibson Dunn, Mr. Hvidt served as a law clerk to the Honorable A. Joe Fish of the United States District Court for the Northern District of Texas.  Mr. Hvidt is a 2015 graduate of Columbia Law School, where he was a James Kent Scholar.  Attached as **Exhibit C** is a true and correct copy of Mr. Hvidt's official firm biography, which contains a list of representative matters.

### 5.  Sydney Scott

34.     I am a partner in Gibson Dunn's Houston office.  In this matter, I was heavily involved in discovery and trial preparation, especially in developing the factual record, preparing the Community Hospitals' witnesses for their depositions, and conducting their direct examinations at trial.

35.     I have experience representing plaintiffs and defendants at every stage of litigation, from pre-suit demands through trial and appeal, in a wide range of white collar and complex commercial disputes, including in the energy industry.  I have been recognized by *Benchmark Litigation* in its "40 & Under List – South" and by *The Best Lawyers in America* for Criminal Defense: White Collar.

36.     Prior to joining Gibson Dunn in May 2022, I practiced at leading litigation firms and served as a law clerk to the Honorable Carl E. Stewart of the United States Court of Appeals for the Fifth Circuit and the Honorable James J. Brady of the United States District Court for the Middle District of Louisiana.  I graduated from the University of Pennsylvania Law School in 2013.  Attached as **Exhibit C** is a true and correct copy of my official firm biography, which contains a list of representative matters.

### 6.  Helgi C. Walker

37.     Helgi C. Walker is a partner in Gibson Dunn's Washington, D.C. office.  In this matter, she led the Community Hospitals' briefing teams and played a pivotal role in developing legal strategy before and during trial.

38.     Ms. Walker is Co-Chair of Gibson Dunn's global litigation practice group, a member of the firm's executive committee, and co-chair of the firm's administrative law and regulatory practice group.  Her practice focuses on appellate, regulatory, and complex litigation matters, and she has extensive experience in appellate challenges to agency rulemakings and other high-stakes commercial litigation.  She has argued twice before the Supreme Court, was recognized by *Chambers USA* as a leading lawyer, and was elected as a Fellow of the American Academy of Appellate Lawyers.

39.     Ms. Walker served in the White House Counsel's Office as Associate Counsel from 2001 to 2003.  She previously served as a law clerk to the Honorable Clarence Thomas of the United States Supreme Court and the Honorable J. Harvie Wilkinson III of the United States Court of Appeals for the Fourth Circuit.  Ms. Walker is a 1994 graduate of the University of Virginia School of Law, where she was a member of the Order of the Coif.  Attached as **Exhibit C** is Ms. Walker's official firm biography, which contains a list of representative matters.

### B.  Gibson Dunn Of Counsel and Associates

40.     Gibson Dunn also staffed this matter with experienced of counsel and associates, who performed substantial work across all phases of litigation.  These timekeepers were responsible for many of the core, labor-intensive tasks required to prosecute this case, including managing and conducting document review, preparing discovery requests and responses, coordinating with the five Community Hospitals on factual development, preparing witnesses for deposition, researching and drafting motions and briefs, analyzing expert issues, and assisting with trial preparation and presentation.  Work was delegated to these timekeepers in a manner designed

to maximize efficiency and minimize cost, with more complex and high-level assignments handled by more senior associates and more hour-intensive tasks performed by junior associates at lower billing rates.

41.     Several additional Gibson Dunn associates billed to the matter.  To avoid any dispute in this regard and ensure swift resolution of this Motion, the Community Hospitals have eliminated their time from this fee application.

### 1. *Christine M. Buzzard – Of Counsel*

42.     Christine M. Buzzard is an Of Counsel in Gibson Dunn's Washington, D.C. office and is a member of the firm's Litigation Department.  She led the Community Hospitals' briefing, oversaw the associates in those efforts, and argued a key dispositive motion at trial.  Ms. Buzzard has substantial experience representing clients in complex litigation, including challenges to federal agency action and matters involving novel constitutional and other legal issues.  She regularly serves as a lead drafter on significant briefing and advises clients on their most consequential litigation and regulatory challenges.

43.     Before rejoining Gibson Dunn in 2024, Ms. Buzzard served for five years as an Attorney-Advisor in the Office of Legal Counsel at the United States Department of Justice, where she advised the White House Counsel, the Attorney General, and senior officials across the executive branch on complex legal issues.  In that role, she received the Attorney General's Award for Distinguished Service.

44.     Ms. Buzzard also served as a law clerk to the Honorable Clarence Thomas of the United States Supreme Court, the Honorable Janice Rogers Brown of the United States Court of Appeals for the District of Columbia Circuit, and the Honorable Richard J. Sullivan, then of the United States District Court for the Southern District of New York.  Ms. Buzzard is a 2013 graduate of Yale University Law School.  Attached as **Exhibit C** is a true and correct copy of Ms. Buzzard's official firm biography, which includes a list of representative matters.

### 2. *Robert A. Batista – Associate*

45.     Robert A. Batista is an associate in Gibson Dunn's Washington, D.C. office and a member of the firm's Litigation Department.  In this matter, Mr. Batista led the briefing of several key motions and played a central role in trial briefing, while also contributing to broader legal strategy throughout the case.

46.     Mr. Batista has experience handling complex litigation and appellate matters, including leading briefing efforts in high-stakes commercial and regulatory disputes.  His practice focuses on litigation involving administrative, constitutional, and commercial issues.  Prior to joining Gibson Dunn, Mr. Batista served as a law clerk to the Honorable Steven M. Colloton of the United States Court of Appeals for the Eighth Circuit and the Honorable Trevor N. McFadden of the United States District Court for the District of Columbia.  Mr. Batista is a 2018 graduate, *cum laude*, from Harvard Law School, where he served as the Supervising Chair of the *Harvard Law Review*.  Attached as **Exhibit C** is a true and correct copy of Mr. Batista's official firm biography.

### 3.  *Emily Cardone – Associate*

47.     Emily Cardone is an associate in Gibson Dunn's Dallas office and a member of the firm's Litigation Department.  In this matter, Ms. Cardone helped lead offensive discovery efforts on behalf of the Community Hospitals, including developing discovery strategy, drafting requests, and coordinating review of Leapfrog's documents.  Ms. Cardone also deposed and examined a third-party witness at trial.

48.     Ms. Cardone has experience in complex commercial litigation at both the trial and appellate levels, including assisting with discovery and motion practice in high-stakes disputes.

49.     Prior to joining Gibson Dunn, Ms. Cardone served as a law clerk to the Honorable Diane P. Wood of the United States Court of Appeals for the Seventh Circuit.  Ms. Cardone is a 2019 graduate from the University of Texas School of Law, where she received the highest honors and served as a Featured Content Editor for the *Texas Law Review*.  Attached as **Exhibit C** is a true and correct copy of Ms. Cardone's official firm biography.

### 4.  *Alexander M. Fischer – Associate*

50.     Alexander M. Fischer is an associate in Gibson Dunn's Houston office.  In this matter, he assisted with fact discovery, played a key role in preparing the CEOs of the five Community Hospitals for deposition and trial, and conducted legal research and drafting efforts in motion practice.

51.     Mr. Fischer's practice focuses on high-stakes litigation and arbitration, particularly matters involving complex contract interpretation and constitutional issues.

52.     Prior to joining Gibson Dunn, Mr. Fischer served as a law clerk to the Honorable Wendy Beetlestone of the United States District Court for the Eastern District of Pennsylvania.

Mr. Fischer graduated in 2022 from Yale Law School.  Attached as **Exhibit C** is a true and correct copy of Mr. Fischer's official firm biography.

### 5.  *Adam J. Garnick – Associate*

53.      Adam J. Garnick is an associate in Gibson Dunn's New York office and a member of the firm's Litigation Department.  In this matter, Mr. Garnick helped oversee fact and document discovery, as well as expert discovery, and contributed to key aspects of trial preparation, including the development of the opening statement and closing argument.

54.      Mr. Garnick has experience in complex litigation matters, including assisting with discovery, motion practice, and trial preparation in high-stakes disputes.

55.      Prior to joining Gibson Dunn, Mr. Garnick served as a law clerk to the Honorable Patty Shwartz of the United States Court of Appeals for the Third Circuit and the Honorable Naomi Reice Buchwald of the United States District Court for the Southern District of New York.  Mr. Garnick graduated in 2021, *magna cum laude*, from the University of Pennsylvania Law School, where he was a Senior Editor of the *University of Pennsylvania Law Review*.  Attached as **Exhibit C** is a true and correct copy of Mr. Garnick's official firm biography.

### 6.  *Andrew V. Kuntz – Associate*

56.      Andrew V. Kuntz is an associate in Gibson Dunn's New York office and a member of the firm's Litigation Department.  In this matter, Mr. Kuntz helped oversee fact and expert discovery and played a central role in preparing the Community Hospitals' expert Dr. Berger for trial testimony, including working closely on the development and presentation of his opinions.

57.      Mr. Kuntz has experience in complex commercial litigation, including matters involving class actions, securities, and regulatory issues, and has contributed to discovery, motion practice, and trial preparation in high-stakes disputes.

58.      From 2022 to 2023, Mr. Kuntz served as a law clerk to the Honorable Victor Marrero of the United States District Court for the Southern District of New York.  Mr. Kuntz is a 2019 graduate of Columbia Law School, where he was a James Kent Scholar.  Attached as **Exhibit C** is a true and correct copy of Mr. Kuntz's official firm biography.

### 7.  *Mary Otoo – Associate*

59.      Mary Otoo is an associate in Gibson Dunn's New York office and a member of the firm's Litigation Department.  In this matter, Ms. Otoo assisted with discovery and the deposition of several key Leapfrog fact and expert witnesses, and contributed to trial preparation.

60.     Ms. Otoo has experience supporting complex litigation matters, including trial preparation, discovery, and motion practice.

61.     Ms. Otoo is a 2022 graduate of Columbia Law School.  Attached as **Exhibit C** is a true and correct copy of Ms. Otoo's official firm biography.

### 8.  Kevin Reilly – Associate

62.     Kevin Reilly is an associate in Gibson Dunn's New York office and a member of the firm's Litigation Department.  In this matter, Mr. Reilly helped oversee expert and third-party discovery and assisted in preparing Dr. Nicholson for trial.  He also handled oral argument regarding key deposition designations at trial.

63.     Mr. Reilly has substantial experience with motion practice and discovery efforts in complex commercial, securities, and regulatory litigation, and has experience supporting high-stakes matters across a range of industries.

64.     Mr. Reilly is a 2020 graduate of New York University School of Law.  Attached as **Exhibit C** is a true and correct copy of Mr. Reilly's official firm biography.

### 9.  Kevin M. Simmons – Associate

65.     Kevin M. Simmons is an associate in Gibson Dunn's Houston office and a member of the firm's Litigation Department.   In this matter, Mr. Simmons led the preparation and organization of trial exhibits and documentary evidence, played a central role in preparing the CEOs of the five Community Hospitals for deposition and trial, and conducted the direct examination of one of those CEO witnesses at trial.

66.     Mr. Simmons has significant experience in all phases of litigation, from initial investigation through trial and appeal, in federal and state courts across the country.  His practice includes representing clients in complex commercial disputes, including matters involving antitrust, contract, and regulatory issues.

67.     Prior to joining Gibson Dunn, Mr. Simmons served as a law clerk to the Honorable Eva Guzman of the Supreme Court of Texas.  He is a 2018 graduate of the Duke University School of Law.  Attached as **Exhibit C** is a true and correct copy of Mr. Simmons' official firm biography, which includes a list of representative matters.

### 10. Marc Aaron Takagaki – Associate

68.     Marc Aaron Takagaki is an associate in Gibson Dunn's New York office and a member of the firm's Litigation Department.  In this matter, Mr. Takagaki oversaw fact discovery

12

for the Community Hospitals, including coordinating document review, discovery responses, and factual development across the five hospitals.  He also deposed and cross-examined one of Leapfrog's key expert witnesses, Mr. Rule, who offered a purported "re-grading" analysis, requiring preparation on complex methodological issues central to Leapfrog's defense.

70. Mr. Takagaki's practice focuses on high-stakes commercial, securities, class action, and white-collar litigation across a wide range of industries, including finance, technology, and life sciences.  He has substantial experience in motion practice, witness examination, and civil discovery.

70. Mr. Takagaki is a 2017 graduate from the University of Michigan Law School. Attached as **Exhibit C** is a true and correct copy of Mr. Takagaki's official firm biography, which includes a list of representative matters.

### 11. Iason Togias – Associate

71. Iason Togias is an associate in Gibson Dunn's New York office and a member of the firm's Litigation Department.  In this matter, Mr. Togias helped draft pleadings and briefs, assisted with discovery and the deposition of key witnesses, and assisted with trial preparation, including drafting cross-examination outlines.

72. Mr. Togias has experience in complex litigation matters at both the trial and appellate level.  He has assisted with discovery, motion practice, and trial preparation in high-stakes disputes.

73. Prior to joining Gibson Dunn, Mr. Togias served as a law clerk to the Honorable Eric D. Miller of the United States Courts of Appeals for the Ninth Circuit.  Mr. Togias graduated in 2022, *cum laude*, from Harvard Law School.  Attached as **Exhibit C** is a true and correct copy of Mr. Togias' official firm biography, which includes a list of representative matters.

### 12. Karsyn Archambeau – Associate

74. Karsyn Archambeau is an associate in Gibson Dunn's New York office and a member of the firm's Litigation Department.  In this matter, Ms. Archambeau reviewed and identified key documents for depositions and trial, supported discovery efforts, and assisted with the preparation of witnesses for deposition and trial.

75. Ms. Archambeau graduated in 2024 from Columbia Law School.  Attached as **Exhibit C** is a true and correct copy of Ms. Archambeau's official firm biography.

### *13. Noah J. Delwiche – Associate*

76.     Noah J. Delwiche is an associate in Gibson Dunn's Washington, D.C. office and a member of the firm's Litigation Department.  In this matter, Mr. Delwiche contributed to briefing and legal research and assisted with the preparation of numerous Leapfrog witnesses.

77.     Mr. Delwiche's practice focuses on administrative law and regulatory practice, appellate and constitutional law, and labor and employment.

78.     Mr. Delwiche graduated in 2024, *magna cum laude*, from Harvard Law School, where he served as a Notes Editor for the *Harvard Law Review*.  Attached as **Exhibit C** is a true and correct copy of Mr. Delwiche's official firm biography.

### *14. Laura Wang – Associate*

79.     Laura Wang is an associate in Gibson Dunn's New York office and a member of the firm's Litigation Department.  In this matter, Ms. Wang reviewed and identified key documents for depositions and trial, supported discovery efforts, and assisted with the preparation of witnesses for deposition and trial.

80.     Ms. Wang graduated in 2024 from the University of Southern California Gould School of Law.  Attached as **Exhibit C** is a true and correct copy of Ms. Wang's official firm biography.

## C.  Local Counsel

81.     The Community Hospitals retained Marcus Rashbaum Pineiro & Meyers LLP and Neiman Mays Floch & Almeida PLLC as local counsel.  Both are leading litigation boutiques in South Florida.  To minimize duplication and maximize efficiency, the firms generally performed those tasks customarily performed by local counsel, including advising on local rules and practices, assisting with filings, and providing strategic input on matters before the Court.

### *1.  Jeffrey Marcus*

82.     Jeffrey Marcus is a partner at Marcus Rashbaum Pineiro & Meyers LLP.  Mr. Marcus was the primary local counsel on this matter and served as a full member of the trial team. He examined multiple witnesses at trial and participated in core trial preparation and strategy.

83.     Mr. Marcus is an experienced trial lawyer with substantial experience in complex civil and white-collar litigation.  He tried more than twenty-five cases to verdict as a federal prosecutor and has extensive experience handling high-stakes litigation, including matters

involving healthcare, securities, and government enforcement. He has been ranked by *Chambers USA* in the top band for litigation and white-collar defense in Florida.

84.     Mr. Marcus served as a law clerk to the Honorable Stanley Marcus of the United States Court of Appeals for the Eleventh Circuit and the Honorable Donald M. Middlebrooks of the United States District Court for the Southern District of Florida. Mr. Marcus is a 1999 graduate of Yale Law School. Attached as **Exhibit D** is a true and correct copy of Mr. Marcus' official firm biography.

### 2.  *Kathryn Meyers*

85.     Kathryn Meyers is a partner at Marcus Rashbaum Pineiro & Meyers LLP and served as local counsel in this matter. Ms. Meyers assisted with local practice and procedure issues and coordination with lead counsel.

86.     Ms. Meyers has more than two decades of experience handling sophisticated criminal, civil, and regulatory matters. Her practice focuses on white-collar criminal defense, and she has tried numerous cases to verdict. Prior to joining Marcus Rashbaum Pineiro & Meyers LLP, Ms. Meyers worked in the New York office of a global law firm and later at a litigation boutique. She has been recognized by *Chambers USA* in white-collar crime and government investigations in Florida.

87.     Ms. Meyers served as a law clerk to the Honorable Thomas Platt of the United States District Court for the Eastern District of New York. Ms. Meyers graduated in 1998 from Washington University School of Law, where she was elected Order of the Coif. Attached as **Exhibit D** is a true and correct copy of Ms. Meyers' official firm biography.

### 3.  *Michael Pineiro*

88.     Michael Pineiro is a partner at Marcus Rashbaum Pineiro & Meyers LLP and served as local counsel in this matter. Mr. Pineiro advised on strategic issues and worked closely with lead counsel on motion practice, discovery, and trial-related matters during this litigation.

89.     Mr. Pineiro focuses his practice on complex business litigation, securities and investor fraud, trust and estates disputes, professional negligence, and regulatory litigation. He has been recognized by *Chambers USA* as a leading commercial litigator in Florida. Prior to joining Marcus Rashbaum Pineiro & Meyers LLP, Mr. Pineiro worked at a global law firm representing clients in securities litigation, government enforcement defense, and complex

commercial litigation matters. He has been recognized by *Chambers USA* as a leading lawyer in general commercial litigation in Florida.

90. Mr. Pineiro served as a law clerk to the Honorable Adalberto Jordan of the United States District Court for the Southern District of Florida. Mr. Pineiro graduated in 2007 from Columbia Law School, where he was a Harlan Fiske Stone Scholar. Attached as **Exhibit D** is a true and correct copy of Mr. Pineiro's official firm biography.

### 4. *Daniel Rashbaum*

91. Daniel Rashbaum is a partner at Marcus Rashbaum Pineiro & Meyers LLP and served as local counsel in this matter. Mr. Rashbaum advised on litigation strategy and issues related to the proceedings before this Court and devoted substantial time to preparing the Community Hospitals' witnesses for deposition.

92. Mr. Rashbaum is an experienced trial lawyer with substantial experience in white-collar criminal defense, internal investigations, regulatory enforcement, and complex litigation. He served as an Assistant United States Attorney for the Southern District of Florida, where he tried more than thirty cases to verdict, all resulting in convictions, and argued multiple cases before the United States Court of Appeals for the Eleventh Circuit. Mr. Rashbaum has extensive experience handling high-stakes matters involving healthcare fraud, securities and commodities laws, the Foreign Corrupt Practices Act, anti-kickback and anti-bribery statutes, insider trading, money laundering offenses, and government enforcement proceedings. He has been ranked by *Chambers USA* in the top band for litigation and white-collar defense in Florida.

93. Mr. Rashbaum graduated *magna cum laude* from Cornell University Law School in 2000. Attached as **Exhibit D** is a true and correct copy of Mr. Rashbaum's official firm biography.

### 5. *Brandon Floch*

94. Brandon Floch is a partner at Neiman Mays Floch & Almeida PLLC and served as local counsel in this matter. Mr. Floch worked extensively with lead counsel throughout the litigation, including by advising on strategy, motion practice, discovery disputes, and hearing preparation.

95. Mr. Floch is an experienced trial lawyer whose practice focuses on high-stakes commercial litigation. He represents individuals, businesses, and investors in complex disputes involving business torts, antitrust, whistleblower actions, and other substantial commercial

matters.  He has substantial experience litigating complex cases against sophisticated institutional parties in both federal and state courts and has tried numerous matters on behalf of both plaintiffs and defendants.

96.     Mr. Floch served as a law clerk of the Honorable James J. Brady of the United States District Court for the Middle District of Louisiana.  Mr. Floch graduated from the University of Pennsylvania Law School in 2016.  Attached as **Exhibit D** is a true and correct copy of Mr. Floch's official firm biography.

97.     The Community Hospitals seek attorneys' fees of $9,906,370.00. The Community Hospitals have calculated these fees using the lodestar method, which is determined by multiplying a reasonable hourly rate by the number of hours reasonably expended in the litigation.  To avoid any dispute over its rates, Gibson Dunn has significantly discounted the standard rates it actually billed in this matter to bring them in line with prevailing rates for complex, commercial litigation within this District.  Gibson Dunn has further excluded timekeepers or time entries to minimize any duplication.  The rates charged by Gibson Dunn and local counsel and the hours expended were reasonable and necessary for the Community Hospitals to prevail and obtain excellent results in this litigation.  The Community Hospitals' requested rates, hours, and total fees for Gibson Dunn attorneys and local counsel are provided below:

| Gibson Dunn | | | | |
|---|---|---|---|---|
| **Timekeeper** | **Title** | **Hourly Rate** | **Hours Claimed** | **Total Fees** |
| Mary Beth Maloney | Partner | $975.00 | 473.8 | $    461,955.00 |
| Daniel P. Chung | Partner | $975.00 | 623.0 | $    607,425.00 |
| Lee R. Crain | Partner | $975.00 | 847.3 | $    826,117.50 |
| Scott K. Hvidt | Partner | $975.00 | 878.0 | $    856,050.00 |
| Sydney Scott | Partner | $975.00 | 470.6 | $    458,835.00 |
| Helgi C. Walker | Partner | $975.00 | 128.7 | $    125,482.50 |
| Christine M. Buzzard | Of Counsel | $800.00 | 888.1 | $    710,480.00 |
| Robert Batista | Associate | $675.00 | 498.8 | $    336,690.00 |
| Emily Cardone | Associate | $675.00 | 670.2 | $    452,385.00 |
| Alexander M. Fischer | Associate | $675.00 | 494.1 | $    333,517.50 |
| Adam Garnick | Associate | $675.00 | 834.0 | $    562,950.00 |

17

| Andrew Kuntz | Associate | $675.00 | 563.3 | $ 380,227.50 |
| Mary Otoo | Associate | $675.00 | 709.4 | $ 478,845.00 |
| Kevin Reilly | Associate | $675.00 | 663.5 | $ 447,862.50 |
| Kevin Simmons | Associate | $675.00 | 731.5 | $ 493,762.50 |
| Marc Aaron Takagaki | Associate | $675.00 | 572.8 | $ 386,640.00 |
| Iason Togias | Associate | $675.00 | 567.8 | $ 383,265.00 |
| Karsyn Archambeau | Associate | $500.00 | 714.6 | $ 357,300.00 |
| Noah Delwiche | Associate | $500.00 | 739.2 | $ 369,600.00 |
| Laura Wang | Associate | $500.00 | 354.8 | $ 177,400.00 |
| **TOTAL** | | | | **$ 9,206,790.00** |

| Local Counsel | | | | |
|---|---|---|---|---|
| **Timekeeper** | **Title** | **Hourly Rate** | **Hours Claimed** | **Total Fees** |
| Jeffrey Marcus | Partner | $975 | 498.0 | $ 485,550.00 |
| Kathryn Meyers | Partner | $975 | 4.6 | $ 4,485.00 |
| Michael Pineiro | Partner | $975 | 78.8 | $ 76,830.00 |
| Daniel Rashbaum | Partner | $975 | 36.1 | $ 35,197.50 |
| Brandon Floch | Partner | $875 | 108.2 | $ 94,675.00 |
| **TOTAL** | | | | **$ 696,737.50** |

98.     The Community Hospitals also seek $596,352.97 in costs incurred in connection with this case. Specifically, the Community Hospitals seek to recover: (1) transcript and court-reporting costs for depositions, hearings, and trial in the amount of $137,423.52; and (2) research expenses in the amount of $458,929.45.  These costs were reasonable and necessarily incurred to litigate this case.  These costs are reflected in Gibson Dunn's invoices attached as **Exhibit A**.

IV.     **Leapfrog's Ability to Pay**

99.     Following entry of the Court's decision on March 6, 2026, Leapfrog began a national fundraising campaign urging financial contributions to help it counteract the "threat" posed by the Court's ruling in this lawsuit.  The campaign, led by Leapfrog's CEO, claimed the decision "raises a serious First Amendment issue about the right to public independent information in the public interest" and called on supporters to "show [their] support with a contribution."

Attached as **Exhibit E** is a copy of Leapfrog's website housing this fundraising campaign (https://leapfroggroup.app.neoncrm.com/campaigns/leapfrog-first-amendment-fund)   as   it appeared on March 9, 2026; the page has since been taken down from the website.

100.   As part of its initial disclosures, Leapfrog produced two declaration pages relating to insurance agreements that may "satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment."   Fed. R. Civ. P. 26(a)(1)(A)(iv).   Attached as **Exhibit F** is a true and correct copy of those documents.   Each declaration page purports to provide coverage of up to $5 million for "[e]ach [e]rroneous [a]ct" during the periods covering May 1, 2024, through May 1, 2025, and May 1, 2025, through May 1, 2026.

## V. Leapfrog's Repeated Refusal to Confer in Good Faith on the Motion

101.   On May 5, 2026, the Community Hospitals' counsel served Leapfrog's counsel with a draft of this Motion and supporting materials pursuant to Local Rule 7.3.  As contemplated and required by Rule 7.3(b), the Community Hospitals' counsel was prepared to confer in good faith with Leapfrog's counsel in an attempt to narrow any fee disputes by agreement before filing the Community Hospitals' Motion with the Court.

102.   On May 7, 2026, Leapfrog's counsel took the position that the Motion should not be heard now, based on, among other things, purported "defects" in the Court's judgement.

103.   Later that day, the Community Hospitals' counsel responded that the Community Hospitals intended to proceed with the Motion consistent with the Federal Rules and Local Rule 7.3 and twice requested times for the parties to confer in good faith as required by the Local Rules.

104.   On May 11, 2026, Leapfrog's counsel reiterated its prior position and repeatedly confirmed that Leapfrog refused to participate in the mandatory conferral process.

105.   Because Leapfrog refused to participate in good faith in the conferral process mandated by Local Rule 7.3(b), the parties were unable to resolve any outstanding fee disputes prior to filing the Motion.

106.   Attached as **Exhibit G** is a true and correct copy of the email chain between counsel concerning Local Rule 7.3's mandatory meet-and-confer process.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 14, 2026, in Houston, Texas.

_____
Sydney Scott

STATE OF TEXAS              §
                           §
COUNTY OF HARRIS           §

Before me the undersigned notary public, personally appeared Sydney Scott known to me or proved to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that she executed the same for the purpose and consideration therein expressed.

Signed on this 14th day of May, 2026.



JENNIFER BASS
My Notary ID # 7925132
Expires July 2, 2029

_____
Notary Public in and for the State of Texas

My Commission Expires: July 2, 2029

20