**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Case No. 25-CV-80526-MIDDLEBROOKS**

GOOD SAMARITAN MEDICAL CENTER,
INC., DELRAY MEDICAL CENTER, INC.,
PALM BEACH GARDENS COMMUNITY
HOSPITAL, INC. D/B/A PALM BEACH
GARDENS MEDICAL CENTER, ST.
MARY'S MEDICAL CENTER, INC. AND
WEST BOCA MEDICAL CENTER, INC.,

     **Plaintiffs,**

v.

THE LEAPFROG GROUP,

     **Defendant.**

_____/

**DEFENDANT THE LEAPFROG GROUP'S REPLY IN
FURTHER SUPPORT OF ITS *EXPEDITED* MOTION TO
SUMMARILY DENY, OR ALTERNATIVELY TO HOLD IN ABEYANCE,
<u>PLAINTIFFS' MOTION FOR FEES, OR TO CONVENE A STATUS CONFERENCE</u>**

**TABLE OF CONTENTS**

Page

INTRODUCTION ...............................................................................................................1

ARGUMENT .....................................................................................................................1

I.    PLAINTIFFS' MOTION IS PREMATURE UNDER FDUTPA AND
      BINDING CIRCUIT PRECEDENT INTERPRETING IT ...........................................1

      A.    Plaintiffs Agree That They Cannot Receive Fees Now .....................................2

      B.    Binding Precedent Requires Summary Denial Or Abeyance ...........................2

      C.    Binding Precedent Is Correct ...........................................................................3

      D.    Judicial Economy Favors Summary Denial Or Abeyance ...............................5

II.   PLAINTIFFS' CLAIMS FOR ATTORNEYS' FEES AND COSTS ARE
      FACIALLY UNREASONABLE ...............................................................................6

      A.    Plaintiffs' Fee Claims Are Unreasonably Inflated On Their Face ...................6

      B.    Plaintiffs' Waiver Argument Fails ....................................................................7

CONCLUSION...................................................................................................................10

## TABLE OF AUTHORITIES

**Page**

### Cases

*AMG Trade & Dist., LLC v. Nissan N.A., Inc.*,
2019 WL 11583366 (S.D. Fla. Aug. 7, 2019)..............................................................5, 9

*Athos Overseas Ltd. v. YouTube, Inc.*,
2024 WL 3431912 (S.D. Fla. May 2, 2024) ......................................................................3

*Berk v. Choy*,
607 U.S. 187 (2026)......................................................................................................1, 3

*Bluhm v. Wyndham Vacation Ownership, Inc.*,
2023 WL 3121397 (M.D. Fla. Mar. 13, 2023) ................................................................5

*Carruthers v. Israel*,
274 F. Supp. 3d 1345 (S.D. Fla. 2017) ...........................................................................9

*In re Chiquita Brands Int'l, Inc. Alien Tort Statute & Shareholder Derivative Litig.*,
2024 WL 4932671 (S.D. Fla. Oct. 15, 2024)...................................................................9

*Club Madonna, Inc. v. City of Miami Beach*,
2015 WL 5559894 (S.D. Fla. Sept. 22, 2015) .................................................................9

*Cohen v. Off. Depot, Inc.*,
184 F.3d 1292 (11th Cir. 1999), *vacated in part on other grounds*, 204 F.3d
1069 (11th Cir. 2000)......................................................................................................3

*Democratic Republic of the Congo v. Air Cap. Grp., LLC*,
2014 WL 12634405 (S.D. Fla. May 8, 2014) ..................................................................5

*Elessar v. Verizon Wireless Personal Commc'ns, LLP*,
2020 WL 6156498 (S.D. Fla. Aug. 26, 2020)..................................................................9

*Fitzgerald v. McNae*,
No. 22-CIV-22171, Dkt. 483 (S.D. Fla. Nov. 12, 2025) .................................................9

*Glass v. United of Omaha Life Ins. Co.*,
33 F.3d 1341 (11th Cir. 1994) ........................................................................................8

*Gonzalez v. Wal-Mart Stores, Inc.*,
2022 WL 18717046 (M.D. Fla. Dec. 12, 2022)...............................................................6

*Hanna v. Plumer*,
380 U.S. 460 (1965).....................................................................................................3, 4

*Herbst v. Am. Orthodontics Corp.*,
   2025 WL 3755394 (S.D. Fla. Jan. 23, 2025) ...................................................................2

*Hunters Run Prop. Owners Ass'n, Inc. v. Centerline Real Est., LLC*,
   2020 WL 9160867 (S.D. Fla. May 26, 2020) ..................................................................5

*Lackey v. Stinnie*,
   604 U.S. 192 (2025) ..........................................................................................................4

*M.G.B. Homes, Inc. v. Ameron Homes, Inc.*,
   30 F.3d 113 (11th Cir. 1994) ...............................................................................1, 2, 4, 6

*Novo Nordisk, Inc. v. Wells Pharmacy Network, LLC*,
   2025 WL 1018422 (M.D. Fla. Apr. 4, 2025) ...............................................................4, 6

*Procaps S.A. v. Patheon Inc.*,
   157 F. Supp. 3d 1199 (S.D. Fla. 2016) .............................................................................2

*Redstone Funding, LLC v. Kunkel Real Est. Investments, LLC*,
   2017 WL 7798641 (S.D. Fla. Mar. 10, 2017)....................................................................7

*Rockwell Prop. Inc. v. Century Surety Co.*,
   2024 WL 5264411 (S.D. Fla. Nov. 20, 2024)....................................................................8

*Specialized Transp. of Tampa Bay, Inc. v. Nestle Waters N. Am., Inc.*,
   2009 WL 1788373 (M.D. Fla. June 22, 2009)...................................................................5

*Suntree Techs., Inc. v. Ecosense Int'l, Inc.*,
   2011 WL 13137984 (M.D. Fla. Oct. 28, 2011) .................................................................6

*United States v. Kaley*,
   579 F.3d 1246 (11th Cir. 2009) ........................................................................................3

**Rules/Statutes**

28 U.S.C. § 2071..................................................................................................................4

28 U.S.C. § 2072..................................................................................................................4

42 U.S.C. § 1988..................................................................................................................9

Federal Rule of Civil Procedure 54 .............................................................................2, 4, 5

Federal Rule of Civil Procedure 54(d)...........................................................................5, 9

Federal Rule of Civil Procedure 54(d)(2)(B)......................................................................4

Fla. Stat. § 501.2105(1)................................................................................................2, 4, 9

S.D. Fla. L.R. 7.3(a)........................................................................................................7, 8

S.D. Fla. L.R. 7.3(b)........................................................................................................8, 9

S.D. Fla. L.R. 7.7 ................................................................................................................8

## **Other Authorities**

Black's Law Dictionary 1352 (rev. 4th ed. 1968) .............................................................4

**INTRODUCTION**

Plaintiffs' opposition to Leapfrog's motion underscores why the Court should summarily deny their premature fee motion. While now agreeing that FDUTPA limits when fees may be "receive[d]" (specifically, until after the appellate process concludes), Plaintiffs try to split hairs and differentiate when their motion supposedly is properly "filed." (Dkt. 231 at 1.) But that leaves no good reason, in law or reason, why briefing should barrel forward before the merits ripen. Nor do Plaintiffs come to grips with their prior, unequivocal acknowledgments that "[e]arlier decisions" by the Eleventh Circuit "treated FDUTPA's exhaustion-of-appeals language as controlling." (Dkt. 225 at 6 n.1); *see also M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 30 F.3d 113, 115 (11th Cir. 1994) (squarely holding that FDUTPA "expressly includes the culmination of the appellate process in its definition of a prevailing party").

The Court should summarily deny Plaintiffs' motion. Briefing the fee award before the predicate judgment comes to rest would accomplish nothing other than waste resources and pose the specter of financial ruin for a watchdog nonprofit. Notably, Plaintiffs hardly even try to justify their insistence that briefing nonetheless be completed now. Instead, Plaintiffs opportunistically advance a spurious waiver theory that defies both the record and the express terms of the very rules on which they rely. If the Court does not deny outright Plaintiffs' motion, then it should hold it in abeyance until the conclusion of Leapfrog's appeal—the very compromise Plaintiffs rejected during the conferral process, even though their own cited cases commend it.

**ARGUMENT**

**I.     PLAINTIFFS' MOTION IS PREMATURE UNDER FDUTPA AND BINDING CIRCUIT PRECEDENT INTERPRETING IT**

In their fees motion, Plaintiffs conceded that, when it comes to "the timing of this motion," "[e]arlier decisions"—including binding Eleventh Circuit authority—"treated FDUTPA's exhaustion-of-appeals language as controlling." (Dkt. 225 at 6 n.1.) That authority had been superseded, Plaintiffs claimed, by the Supreme Court's recent decision in *Berk v. Choy*, 607 U.S. 187 (2026). (*Id.*) Leapfrog then refuted that account—explaining that *Berk* is inapplicable here and that the passage Plaintiffs cite does no more than restate the *Erie* doctrine. (Dkt. 227 at 2-3.) Unable to respond on those points, Plaintiffs have pivoted. Now, according to Plaintiffs, there is actually no conflict between FDUTPA and federal law at all—and thus no need to resort to binding Eleventh Circuit precedent, or the *Erie* doctrine, or *Berk*—because FDUTPA supposedly controls only when fees are "receive[d]," not when a motion is "*filed*" and "rule[d]" on. (Dkt. 231 at 1.)

1

That about-face does not help Plaintiffs.  Plaintiffs are right now that FDUTPA bars them from "receiv[ing]" fees before appeals have been exhausted.  (Dkt. 231 at 1.)  But they were equally right the first time, insomuch as Eleventh Circuit precedent prevents them from seeking fees now because they have not yet "prevail[ed]" post-appeal. *M.G.B. Homes*, 30 F.3d at 115.  A motion that should not be granted, as both sides agree, should not be briefed before it can be granted.

### A.      Plaintiffs Agree That They Cannot Receive Fees Now

As a threshold matter, Plaintiffs concede that any *executable* fee award would be premature.  Plaintiffs admit that state law allows for a prevailing party to "receive" fees only after exhaustion of all appeals, and on that basis cease perceiving any "conflict" between state and federal law.  (Dkt. 231 at 1.)  Accordingly, although their motion briefly floats whether this Court would be "inclined to defer the ultimate fee award" (*Id.* at 2 n.1), Plaintiffs concede that no such award can presently be entered and executed.  As to that much, Leapfrog agrees.

### B.      Binding Precedent Requires Summary Denial Or Abeyance

As Plaintiffs previously recognized, under "[e]arlier decisions" both in the Eleventh Circuit and in the Southern District of Florida, "FDUTPA's exhaustion-of-appeals language" is "controlling in federal court" as to "the timing of this motion."  (Dkt. 225 at 6 n.1.)  Plaintiffs were correct then but are wrong now.

As Plaintiffs continue to recognize, Rule 54 expressly calls for the application of state law "where another statute supplies an alternative timing rule for filing a fee motion."  (Dkt. 231 at 4 (emphasis omitted).)  Although Plaintiffs tie themselves in doctrinal knots, binding precedent controls the proper timing here.  The Eleventh Circuit has held that FDUTPA "expressly includes the culmination of the appellate process in its definition of a prevailing party." *M.G.B. Homes*, 30 F.3d at 115.  And under FDUTPA, only a "prevailing party" may seek fees.  Fla. Stat. § 501.2105(1).  So "[t]o award such fees" under FDUTPA, "the Court must … ensure that all appeals have been exhausted." *Herbst v. Am. Orthodontics Corp.*, 2025 WL 3755394, at *1 (S.D. Fla. Jan. 23, 2025) (Middlebrooks, J.).  Because Leapfrog's "appeals" have not "been exhausted," no fees may be "award[ed]" at this time. *Id.*; (*see also* Dkt. 225 at 6 n.1 (citing *M.G.B. Homes*, 30 F.3d at 115; *Procaps S.A. v. Patheon Inc.*, 157 F. Supp. 3d 1199, 1200 (S.D. Fla. 2016))).  That clear, controlling precedent is no less clear and controlling now than it was when Plaintiffs

2

acknowledged that it spoke to the proper timing of their fee briefing no less than to their substantive entitlement.[1]

What has changed, apparently, is that Plaintiffs have come to realize that *Berk v. Choy* affords no colorable basis for evading precedent. An "intervening Supreme Court case" does not abrogate prior Eleventh Circuit precedent unless it "actually abrogate[s] or directly conflict[s] with, as opposed to merely weaken[s], the" Eleventh Circuit's prior holding. *United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009). Plaintiffs make no serious argument that *Berk* meets that demanding standard. They now say that *Berk* "clarified" that "express requirements" in the Federal Rules cannot be modified "even if the state law could be characterized as 'substantive.'" (Dkt. 231 at 5.) But *Berk*'s generic restatement of the *Erie* doctrine clarified only what was already crystal clear for decades. In truth, the Eleventh Circuit has long adhered to the rule that *Berk* supposedly "clarified": "Under *Hanna,* the proper question to ask is not whether the state law provision is procedural or substantive; instead, the court must ask whether the state law provision conflicts with a federal procedural rule. If it does, the federal procedural rule applies and the state provision does not." *Cohen v. Off. Depot, Inc.*, 184 F.3d 1292, 1296 (11th Cir. 1999), *vacated in part on other grounds*, 204 F.3d 1069 (11th Cir. 2000); (*compare* Dkt. 231 at 5 (same)).[2] That is black-letter law. "When a situation is covered by one of the Federal Rules, the question facing the court … [is] only [whether] the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions." *Hanna v. Plumer*, 380 U.S. 460, 471 (1965).

### C.     Binding Precedent Is Correct

Even setting aside binding precedent, Plaintiffs' position defies first principles and plain text. Plaintiffs lead by saying that "the timing of attorneys' fees motions" is governed by Federal Rule of Civil Procedure 54. (Dkt. 231 at 3.) But that does not help Plaintiffs because the rule

---

[1]   Plaintiffs cite one (1) case in which a court "considere[ed] and decide[d] FDUTPA fee issues while appeals are pending." (Dkt. 231 at 4 (citing *Athos Overseas Ltd. v. YouTube, Inc.*, 2024 WL 3431912, at *2, *12 (S.D. Fla. May 2, 2024).) But that court had good reason to decide the motion then: That case involved $2.8 million in fees for copyright claims and only $72,000 for a FDUTPA claim. *Athos*, 2024 WL 3431912, at *1. That court did not even cite FDUTPA's appeal-exhaustion provision because only a small fraction of the fees implicated FDUTPA.

[2]   Although it is true that the Supreme Court did not "grant[] certiorari in *Berk* merely to restate something that has been clear to everyone since 1965" (Dkt. 231 at 5), it is also true that the specific question occasioning the grant was well removed from the general, longstanding rule.

applies "unless *a statute* . . . provides otherwise." Fed. R. Civ. P. 54(d)(2)(B) (emphasis added). Far from supplanting the "statute," therefore, Rule 54 *expressly defers to FDUTPA*. Nor can Plaintiffs argue that the local rule *itself* preempts FDUTPA. The Federal Rules preempt contrary state law under *Erie* because they are issued under the Rules Enabling Act, which gives the Supreme Court "the power to prescribe general rules of practice and procedure" and render "[a]ll laws in conflict with such rules" of "no further force or effect." 28 U.S.C. § 2072(a)-(b); *see Hanna*, 380 U.S. at 471-72. By contrast, the statute authorizing court rules, including local rules of district courts, lacks any such provision. *See* 28 U.S.C. § 2071. And while Rule 54 allows for a court rule to control the timing question by default, it does not preempt state law: To the contrary, its timing rules operate *unless* a "statute" has provided "otherwise." Fed. R. Civ. P. 54(d)(2)(B).

As for Plaintiffs' reading of FDUTPA, it slices the salami too thin. Again, at the outset, Plaintiffs agree that they cannot receive fees unless and until they are a "prevailing party" after all appeals conclude. Instead, they say that although they cannot be awarded fees now, the Court should nonetheless bless a motion being "*filed*," "brief[ed]," and "rul[ed]" on "while an appeal is pending." (Dkt. 231 at 1.) But that makes no sense. As the Eleventh Circuit has held, FDUTPA "expressly includes the culmination of the appellate process in its definition of a prevailing party," not just in determining who may receive fees. *M.G.B.*, 30 F.3d at 115. That conclusion follows directly from the text of FDUTPA. FDUTPA says that a "prevailing party" is one that is "prevailing" "after judgment in the trial court and exhaustion of all appeals." Fla. Stat. § 501.2105(1). A legal term of art, a "prevailing party" is "[t]he party ultimately prevailing when the matter is finally set at rest." *Lackey v. Stinnie*, 604 U.S. 192, 200 (2025) (quoting Black's Law Dictionary 1352 (rev. 4th ed. 1968)); *see also id.* at 206 (party who has won "conclusive, enduring judicial relief"). For purposes of FDUTPA, the matter is not at rest, and a party has not prevailed, before the "exhaustion of all appeals." Fla. Stat. § 501.2105(1).

Deciding the fees motion now, following costly investigation of reams of billing records, would also be wasteful considering that FDUTPA "contemplates situations in which parties who prevailed at the trial level may" end up being "nonprevailing" as FDUTPA uses that term "after the appellate process is exhausted." *M.G.B. Homes*, 30 F.3d at 115. Courts have taken the "plain language of Fla. Stat. § 501.2105(1) at face value and routinely denied motions for attorney's fees (including motions for entitlement to attorney's fees) under FDUTPA without prejudice, subject to renewal, if appropriate, following the conclusion of an appeal." *Novo Nordisk, Inc. v. Wells*

4

*Pharmacy Network, LLC*, 2025 WL 1018422, at *3 (M.D. Fla. Apr. 4, 2025). Because Rule 54 allows for the Court to "deny the motion without prejudice" in order to "avoid piecemeal resolution of fee disputes," courts ruling under FDUTPA, including in this District, regularly "deny [fee motions] without prejudice and with leave to re-file following the conclusion of [the] appeal." *AMG Trade & Dist., LLC v. Nissan N.A., Inc.*, 2019 WL 11583366, at *1 (S.D. Fla. Aug. 7, 2019) (first quoting Fed. R. Civ. P 54(d), Advisory Committee Notes to the 1993 Amendments; second citation omitted). This Court should do the same as a matter of law. In any event, sound exercise of this Court's discretion would lead to the same result. (*See* Dkt. 227 at 4.)

**D.      Judicial Economy Favors Summary Denial Or Abeyance**

Finally, Plaintiffs argue that judicial economy favors Leapfrog and the Court devoting resources now to fully briefing and deciding the fee motion, even though it is still unclear whether and to what extent Plaintiffs will remain the prevailing party. Three outcomes are possible: (1) If this Court grants Leapfrog's pending motion for reconsideration or to alter or amend the judgment, or for new trial, Plaintiffs' fee motion would be mooted; (2) if this Court denies Leapfrog's pending motion, but Leapfrog prevails at the Eleventh Circuit, Plaintiffs' fee motion would similarly be mooted; and (3) even if this Court denies Leapfrog's motion and Leapfrog's appeal is unsuccessful, Plaintiffs may revisit their claimed fees. In any scenario, going through the exercise of briefing and deciding the fee motion now would be premature, inefficient, and a recipe for piecemeal briefing and adjudication. *See Specialized Transp. of Tampa Bay, Inc. v. Nestle Waters N. Am., Inc.*, 2009 WL 1788373, at *1 (M.D. Fla. June 22, 2009) ("If this Court were to resolve the attorney's fees and costs issues while an appeal remains pending, it would likely be asked to repeat the procedure following the appeal. This Court prefers to avoid the piecemeal adjudication of attorney's fees and cost."); *Bluhm v. Wyndham Vacation Ownership, Inc.*, 2023 WL 3121397, at *11 (M.D. Fla. Mar. 13, 2023) (similar).

To argue the contrary, Plaintiffs largely cite cases that either did not concern FDUTPA or whistled past it as peripheral. *See* Part I.B *supra*. But even if Plaintiffs were correct that courts are not *barred* from allowing a FDUTPA fee motion to be briefed while an appeal is pending, the Court would still have *discretion* to conclude, as courts typically do, that judicial economy favors holding the fee motion in abeyance, if not denying it outright. *See, e.g.*, *Democratic Republic of the Congo v. Air Cap. Grp., LLC*, 2014 WL 12634405, at *1 (S.D. Fla. May 8, 2014); *Hunters Run Prop. Owners Ass'n, Inc. v. Centerline Real Est., LLC*, 2020 WL 9160867, at *2 (S.D. Fla. May

5

26, 2020); *Gonzalez v. Wal-Mart Stores, Inc.*, 2022 WL 18717046, at *2 (M.D. Fla. Dec. 12, 2022). Plaintiffs also argue that Local Rule 7.3 promotes efficiency by enabling adjudication while the case's merits are still fresh in the judge's mind. But FDUTPA reflects the state's different judgment about how best to promote judicial economy in this precise context. As the Eleventh Circuit has acknowledged, failing to wait until the "culmination of the appellate process" to determine prevailing-party status under FDUTPA invites the "perverse result" that "parties who obtain reversals of trial court judgments on appeal could be liable for the attorney's fees of parties who erroneously prevailed in trial court." *M.G.B. Homes*, 30 F.3d at 115.

Finally, Plaintiffs argue it would be preferable to decide fee issues now so that fee issues can be considered alongside the merits by the Eleventh Circuit. But they thereby put the cart before the horse, where a motion remains pending even here for reconsideration or to alter or amend the judgment, and where weighty constitutional questions loom. Regardless, courts flatly reject this argument. *See, e.g.*, *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 2011 WL 13137984, at *4 (M.D. Fla. Oct. 28, 2011) ("It does not appear that consideration of the appeal would be better informed if accompanied by a decision on attorneys' fees."); *Novo Nordisk*, 2025 WL 1018422, at *3 (same).

## II. PLAINTIFFS' CLAIMS FOR ATTORNEYS' FEES AND COSTS ARE FACIALLY UNREASONABLE

Even if the Court does not summarily deny Plaintiffs' fee motion as premature, it should reach the same result on the merits. Plaintiffs' eight-figure fee claims against a nonprofit watchdog reflect grossly disproportionate billing and are facially unreasonable. That is reason enough for the Court to exercise its discretion to deny Plaintiffs any fee award. Nor can Plaintiffs' mask the defects in their request by manufacturing a waiver argument.

### A. Plaintiffs' Fee Claims Are Unreasonably Inflated On Their Face

Plaintiffs seek to recover fees for 13,149 hours billed on a single-claim FDUTPA case. That figure is orders of magnitude greater than the time Leapfrog's counsel spent litigating the same case—a figure that itself includes work on claims the hospitals did not win, including their TRO, preliminary injunction, and later-abandoned damages claims. Having disavowed their damages claims as a means of avoiding discovery into their finances and claimed harm, Plaintiffs may not now derive monetary leverage, from rampant overstaffing and inflated billings, so as to imperil the continued existence of a consumer-advocacy nonprofit that monitors their conduct for

6

the public good.  For that reason alone, the Court should summarily deny Plaintiffs' fee motion for reasons that transcend its improper timing.

Plaintiffs' opposition offers no substantive defense of their putative reasonableness. Instead, Plaintiffs try to avoid scrutiny of their fees by advancing the implausible contention that the Court should summarily deem Leapfrog's objections as though they have been waived.  That argument comes with irony given that the "failure to respond to an argument" in a motion "results in waiver."  *Redstone Funding, LLC v. Kunkel Real Est. Investments, LLC*,  2017 WL 7798641, at *4 n.9 (S.D. Fla. Mar. 10, 2017) (Middlebrooks, J.).  As explained below, it is also wrong.

### B.        Plaintiffs' Waiver Argument Fails

Despite professing the importance of adhering to Local Rule 7.3, Plaintiffs argue contrary to the Rule's terms.  Rather than stopping at requesting assurance that their fee motion "be [deemed] *filed* and *served* within sixty (60) days" of judgment, S.D. Fla. L.R. 7.3(a) (emphases added), which is all the Rule requires, *see supra*, p. 4, Plaintiffs demand the conclusion of all briefing, followed by summary adjudication, lest Leapfrog be held to have waived.  From that it would follow that Leapfrog must either (a) incur the formidable burdens and expense of fighting over $10.5 million in fees claimed, while facing the *further* expense of attempted fee-shifting by the Plaintiffs for their side of that, *plus* the risk of *re*-doing much the same fight in the event that the underlying judgment changes or else (b) waiving all substantive objections to fees.  That dilemma, as invented by the Plaintiffs, is anomalous, perverse, and untenable.

Indeed, the Local Rule on which Plaintiffs rely expressly refutes their waiver theory. Again, the Rule by its terms contemplates only that such motions be "filed and served"—not fully briefed or finally adjudicated—within sixty days of judgment.  S.D. Fla. L.R. 7.3(a).  In light of that, Leapfrog offered a sensible compromise:  Plaintiffs could file their motion (which would indisputably accomplish full compliance with the Local Rule) while stipulating to holding in it abeyance until the conclusion of Leapfrog's appeal (which would at least approach satisfying FDUTPA and the circuit precedent interpreting it).  Having rejected that commonsense solution, without identifying the slightest prejudice they faced from it, the Plaintiffs are in no position to fault *Leapfrog* for supposedly taking a "hardline position."  (Dkt. 231 at 6.)   Much less can Plaintiffs paint Leapfrog as the "hardliner" even as they claim absolute entitlement to automated entry of an eight-figure fee.

Furthermore, Plaintiffs ignore the express provision of Local Rule 7.3(a) that authorizes "either party [to] move the Court to determine entitlement *prior* to submission on the issue of *amount*." S.D. Fla. L.R. 7.3(a) (emphases added). Here, Leapfrog explained to Plaintiffs at painstaking length, in reference to on-point caselaw and practical considerations, why it would make practical sense to obtain the Court's guidance before the parties potentially incurred unnecessary burdens and expenses disputing issues of "amount," even where the threshold issue of Plaintiffs' "entitlement" would, by any reading of the law, be highly questionable, at best. If anyone violated the letter and spirit of the Rule, including its admonition that any fee motion "shall not be filed until a *good faith* effort to resolve the motion … has been completed," it was the Plaintiffs who committed the violation. S.D. Fla. 7.3(a) (emphasis added).[3]

Even setting aside Leapfrog's express entitlement under the Local Rules to seek threshold adjudication of the entitlement question, however, the Local Rules require only that parties confer with "*reasonable* particularity." S.D. Fla. L.R. 7.3(b) (emphasis added). And Leapfrog's substantive objections to Plaintiffs' fee requests were more than reasonable under the circumstances. Faced with binding precedent requiring the exhaustion of appeals before the adjudication of FDUTPA fee motions and a Local Rule permitting either party to seek determinations on fee-entitlement issues at the threshold, Leapfrog availed itself of the processes authorized by the Rule, moving for summary denial of the fee motion and "describ[ing] in writing" multiple substantive objections to Plaintiffs' fee claims. *Id.* There was nothing unreasonable about Leapfrog trying to conserve party and judicial resources by requesting an initial ruling on entitlement before scrutinizing thousands of pages of overlarded billings. *See, e.g.*, *Rockwell Prop. Inc. v. Century Surety Co.*, 2024 WL 5264411, at *2 (S.D. Fla. Nov. 20, 2024) (finding that determining entitlement first "would economize judicial and party resources").

In multiple respects, therefore, the Rule itself refutes Plaintiffs' notion that Leapfrog committed any knowing waiver here, let alone one that should cost it $10.5 million in fees. By no fair reading of the record did Leapfrog knowingly abandon a known right, which is what Plaintiffs would need to show. *See Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1348-49 (11th

---

[3]   Nor is that violation isolated. Even as they pillory Leapfrog for one alleged violation, Plaintiffs yet again flout the rule against "furnish[ing] the Court with copies of correspondence between or among counsel." S.D. Fla. L.R. 7.7; (*see* Dkt. 219-1 (filing correspondence with counsel unrelated to any motion); Dkt. 219-2 (same); Dkt. 219-3 (same); Dkt. 226-8 (filing correspondence with Leapfrog's counsel); Dkt. 231-1 (same).)

Cir. 1994) (holding that no waiver occurred as a matter of law where the defendant "did not knowingly and intentionally waive" the claimed right).

None of Plaintiffs' cases suggests otherwise.  In one, Chief Judge Altonaga later endorsed a decision process that contradicts the one that Plaintiffs now propose, ordering the fee motion terminated until the conclusion of an appeal.  *See Fitzgerald v. McNae*, No. 22-cv-22171, Dkt. 483 (S.D. Fla. Nov. 12, 2025) ("[T]he Motion for Award of Attorneys' Fees and Costs …, and the Bill of Costs … are TERMED.  The Motions are deemed timely filed.  Depending on the outcome of the appeal, the Court will direct the Clerk to reinstate the Motions.").  And none of Plaintiffs' remaining cases even involved FDUTPA, let alone implicated the threshold timing issue in question here.  *See In re Chiquita Brands Int'l, Inc. Alien Tort Statute & Shareholder Derivative Litig.*, 2024 WL 4932671, at *2-3 (S.D. Fla. Oct. 15, 2024) (adjudicating fee claim under charging lien); *Elessar v. Verizon Wireless Personal Commc'ns, LLP*, 2020 WL 6156498, at *3-5 (S.D. Fla. Aug. 26, 2020) (fee claim under offer-of-judgment statute); *Carruthers v. Israel*, 274 F. Supp. 3d 1345, 1349 (S.D. Fla. 2017) (fee claim under consent decree and stipulations); *Club Madonna, Inc. v. City of Miami Beach*, 2015 WL 5559894, at *3-8 (S.D. Fla. Sept. 22, 2015) (fee claim under 42 U.S.C. § 1988).

Plaintiffs' failure to locate a template for their waiver argument is telling.  Indeed, it is difficult to overstate their bottom-line ask: Plaintiffs demand an order requiring a nonprofit watchdog to pay an eight-figure fee award *without* considering the merits of the fee claims, *before* the "exhaustion of all appeals" required by the governing statute and binding circuit precedent, Fla. Stat. § 501.2105(1), and *after* the nonprofit has availed itself of the governing Local Rule's express provision permitting it to seek advanced procedural guidance from the Court, S.D. Fla. L.R. 7.3(a).  For good reason, that jarring request appears unprecedented here.  And Plaintiffs' failure to justify their claimed urgency makes it that much worse.  Plaintiffs concede in multiple places that they cannot, in any event, initiate collection proceedings until the exhaustion of Leapfrog's appeal.  *See supra*, p. 2.  And they struggle (Dkt. 231 at 8-10) even to articulate reasons why their fee motion cannot wait—just as other fee motions under FDUTPA commonly do.  *E.g.*, *AMG Trade*, 2019 WL 11583366, at *1.

Whatever path the Court chooses, it should not indulge Plaintiffs' effort to precipitously wipe out a consumer-advocacy nonprofit with a "laudable" mission.  (Dkt. 212 at 3.)  Even if the Court were not inclined summarily to deny Plaintiffs' fee motion and to adjudicate it before the

exhaustion of Leapfrog's appeal, it should at the very least provide the requested guidance and thereafter afford the parties additional time for a more detailed conferral on the issue.

## CONCLUSION

The Court should summarily deny Plaintiffs' fee motion, or alternatively, hold it in abeyance pending the exhaustion of all appeals.  The Court may also wish to convene a status conference to supply guidance to the parties on the appropriate process and timetable for further addressing Plaintiffs' fee request.

DATED:  June 3, 2026       Respectfully submitted,


QUINN EMANUEL URQUHART & SULLIVAN LLP

By  */s/ Jason D. Sternberg*
Jason D. Sternberg

Derek L. Shaffer (*pro hac vice*)
**QUINN EMMANUEL URQUHART & SULLIVAN LLP**
555 13th Street NW, Suite 600
Washington, D.C. 20005
(202) 538-8123
derekshaffer@quinnemanuel.com

Jason D. Sternberg (Fla. Bar No. 72887)
**QUINN EMMANUEL URQUHART & SULLIVAN LLP**
2601 South Bayshore Drive, 15th Floor
Miami, FL 33133
jasonsternberg@quinnemanuel.com
(305) 439-5008

*Counsel for Defendant The Leapfrog Group*

11

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 3rd day of June, 2026, a true and correct copy of the foregoing document was electronically transmitted to all counsel of record via the CM/ECF system.

By: */s/ Jason D. Sternberg*
Jason D. Sternberg
Florida Bar No. 72887
jasonsternberg@quinnemanuel.com

12